# IN THE SUPREME COURT OF CALIFORNIA

THE PEOPLE,
Plaintiff and Respondent,

v.

JOSE LUIS PEREZ et al.,
Defendants and Appellants.

S248730

Fourth Appellate District, Division Two
E060438

San Bernardino County Superior Court
FV1901482

February 27, 2020

This opinion precedes companion case S249872,
also filed on February 27, 2020.

Justice Groban authored the opinion of the Court, in which
Chief Justice Cantil-Sakauye and Justices Chin, Corrigan, Liu,
Cuéllar, and Kruger concurred.

PEOPLE v. PEREZ

S248730

Opinion of the Court by Groban, J.

*People v. Sanchez* (2016) 63 Cal.4th 665 (*Sanchez*) held that an expert cannot relate case-specific hearsay to explain the basis for his or her opinion unless the facts are independently proven or fall within a hearsay exception.  We concluded that if the prosecution expert seeks to relate testimonial hearsay, the confrontation clause is violated unless there is a showing of unavailability and the defendant had a prior opportunity for cross-examination or forfeited that right.  We granted review in this case to determine whether a defendant's failure to object at trial, before *Sanchez* was decided, forfeited a claim that a gang expert's testimony related case-specific hearsay in violation of the confrontation clause.  We now conclude that a defense counsel's failure to object under such circumstances does not forfeit a claim based upon *Sanchez.*  Accordingly, we reverse the judgment of the Court of Appeal here, which reached the opposite conclusion.

## I.  BACKGROUND

On June 23, 2009, a motorist driving on U.S. Highway 395 near Victorville encountered a man walking on the road and bleeding from gunshot wounds to his face and abdomen.  Police arrived on the scene and followed a trail of blood to a pickup truck parked a few blocks away.  There, the police found two other men, who had both died from gunshot wounds.

1

The surviving victim told police that he had been kidnapped a few days earlier in the city of South Gate, near Los Angeles. He was visiting a house on Center Street when a group of men held him at gunpoint and tied him up with zip ties. The group forced the victim to call two other acquaintances and summon them to the house. Upon their arrival, the group then bound the other two as well. The group forced the three victims to arrange for deliveries of money and drugs, which the group then took. The group put the victims into vehicles and drove them away from the house. The three victims were eventually shot and left for dead near Victorville. The survivor identified a person named "Lalo" as the shooter.

In police interviews, defendant Jose Luis Perez admitted that he was present during the crimes up to just before the shooting and that his participation consisted of duct-taping a sock over the eyes of one of the victims and then putting him in zip ties. Perez stated that he got into a vehicle when the group left the house with the victims, but that the vehicle he was in lost track of the other vehicles. Perez incriminated his codefendants Edgar Ivan Chavez Navarro ("Chavez") and Pablo Sandoval, as well as Sabas Iniguez, Caesar Rodriguez, and Eduardo Alvarado (nicknamed "Lalo"). Perez admitted he heard the plan was to rob the victims and kill them but claimed that he was not supposed to be present and that the others simply showed up earlier than expected at the house on Center Street while he was there. Perez claimed that Sandoval threatened to kill him and his family if he talked.

Chavez, Perez, and Sandoval were all tried together, but Perez had a separate jury. Iniguez testified against them pursuant to plea bargain. He testified that a drug dealer named "Max" owed a debt to other drug dealers (the victims here) for

methamphetamine. Max was a cartel member and Sandoval reported to him. Alvarado was also a cartel member and Chavez reported to him. One of the victims who died was a cartel member and reported to "Nacho," i.e., the "big boss" in Guadalajara. The surviving victim reported to that decedent victim. Max planned to ambush his creditors and rob them of drugs and money. Iniguez, Sandoval, Chavez, Perez, Alvarado, Rodriguez, and three unknown persons all assisted in carrying out the plan.

The prosecution's gang expert Jeff Moran testified that the Sinaloa drug cartel produces large amounts of methamphetamine, cocaine, and marijuana and transports them to the United States to sell. The cartel operates as a franchise and is divided into territories, which are subdivided into cells. Each cell connects to someone in the cartel, but each cell works independently of the other cells. At the time of trial, "El Chapo" Guzman was the head of the Sinaloa cartel. "Nacho" was Ignacio Coronel, who was killed in 2010. At the time of the offenses, Coronel worked in Guadalajara and was number three in the Sinaloa drug cartel. In Moran's opinion, Iniguez, Sandoval, Chavez, Perez, Alvarado, and Rodriguez were all members or associates of the Sinaloa drug cartel. He testified that the group's coordinated efforts are consistent with members or associates of a criminal street gang acting in association or in concert with each other. He testified that he formed his opinions based upon his training, experiences, and information obtained from this investigation. This included information obtained from interviews he and other detectives conducted, Perez's statements to police, trial testimony, classes, Internet research, reports, articles about the Guzman cartel, and regular discussions with Drug Enforcement Administration agents

about cartels. Defense counsel did not object to Moran's testimony on hearsay, confrontation clause, or Evidence Code section 352 grounds. To establish the pattern of criminal gang activity, the court took judicial notice that Alvarado, Iniguez, and Rodriguez had been convicted of murder, attempted murder, and kidnapping, based upon the same events charged in the present case.[1]

On October 31 and November 1, 2013, the juries convicted Chavez, Sandoval, and Perez each of two counts of first degree special circumstance murder (Pen. Code, §§ 187, subd. (a), 190.2, subd. (a)),[2] one count of attempted premeditated murder (§§ 664, 187, subd. (a)), three counts of kidnapping for ransom (§ 209, subd. (a)), three counts of kidnapping to commit robbery (§ 209, subd. (b)(1)), and one count of street terrorism (§ 186.22, subd. (a)). The jury found true gang (§ 186.22, subd. (b)) and firearm (§ 12022.53, subds. (d) & (e)(1)) enhancements. The trial court sentenced each defendant to five terms of life without the possibility of parole.

Defendants appealed. In 2016, before the appeals were resolved, we issued our opinion in *Sanchez, supra,* 63 Cal.4th 665. In supplemental briefing, Chavez argued in the Court of Appeal that the gang expert's testimony was hearsay and had been presented to the jury in violation of the confrontation clause. Chavez claimed that the gang expert testified to case-

---

[1] Alvarado and Rodriguez were tried separately and were convicted of similar offenses as the defendants in this matter. Perez was originally tried jointly with Iniguez on the same charges here but with different juries. Iniguez's jury convicted him on all counts, but Perez's hung on all counts.

[2] All further unspecified statutory references refer to the Penal Code.

specific hearsay in the following ways: (1) Iniguez admitting he was a cartel member; (2) Sandoval's activities showed that he was a cartel member; (3) sources told Moran that Sandoval was the one who had direct contact with Max, who was calling the shots; (4) based on his "involvement and participation in this investigation," Moran believed Chavez was a cartel associate who worked directly for Lalo; (5) Moran's investigation, including Perez's admission to law enforcement, led Moran to believe Perez was a low-level associate who wanted to work for Sandoval and his involvement in this case was an audition; and (6) sources told Moran and other investigators that the crimes in this case were part of a cartel-ordered hit.

The Court of Appeal held that Chavez's failure to object to case-specific hearsay in expert testimony at trial forfeited any *Sanchez* claim on appeal. The Court of Appeal found that "[e]ven though this case was tried before *Sanchez* was decided, previous cases had already indicated that an expert's testimony to hearsay was objectionable. If anything, *Sanchez* narrowed the scope of a meritorious objection by limiting it to case-specific hearsay." Therefore, "such objections would not have been futile."

Defendants petitioned for review. We granted the petitions and transferred the matter for the Court of Appeal to reconsider the cause in light of recent amendments to the firearm enhancement statutes. (See § 12022.53, subd. (h), added by Stats. 2017, ch. 682, § 1.) On our own motion, we also directed the Reporter of Decisions not to publish the opinion. Upon the case's return, as relevant here, the Court of Appeal again held that Chavez's counsel's failure to object in the trial court forfeited any objection to expert testimony to case-specific

hearsay under *Sanchez*. (*People v. Perez* (2018) 22 Cal.App.5th 201, 212.)

Defendants Chavez and Perez petitioned for review. We granted Chavez's petition to consider the limited issue of whether defendant's failure to object at trial, before *Sanchez* was decided, forfeited his claim that a gang expert's testimony related case-specific hearsay in violation of his Sixth Amendment right to confrontation. We denied Perez's petition.

## II. DISCUSSION

Chavez argues that, even though he did not raise a confrontation clause objection to the gang expert's testimony at the time of trial, he did not forfeit the claim because *Sanchez* had not yet been decided and such an objection would therefore have been futile. We agree.

Ordinarily, "the failure to object to the admission of expert testimony or hearsay at trial forfeits an appellate claim that such evidence was improperly admitted." (*People v. Stevens* (2015) 62 Cal.4th 325, 333; accord, Evid. Code, § 353, subd. (a).) " 'The reason for the [objection] requirement is manifest: a specifically grounded objection to a defined body of evidence serves to prevent error. It allows the trial judge to consider excluding the evidence or limiting its admission to avoid possible prejudice. It also allows the proponent of the evidence to lay additional foundation, modify the offer of proof, or take other steps designed to minimize the prospect of reversal.' " (*People v. Partida* (2005) 37 Cal.4th 428, 434.) Even when not required under our forfeiture doctrine, an objection can still serve these important purposes and can be crucial to developing the law.

Nevertheless, "[a]s this court has explained, '[r]eviewing courts have traditionally excused parties for failing to raise an issue at trial where an objection would have been futile or wholly unsupported by substantive law then in existence.' " (*People v. Brooks* (2017) 3 Cal.5th 1, 92, quoting *People v. Welch* (1993) 5 Cal.4th 228, 237.) Indeed, " ' "[w]e have excused a failure to object where to require defense counsel to raise an objection 'would place an unreasonable burden on defendants to anticipate unforeseen changes in the law and encourage fruitless objections in other situations where defendants might hope that an established rule of evidence would be changed on appeal.' " ' " (*People v. Edwards* (2013) 57 Cal.4th 658, 705 (*Edwards*).) "In determining whether the significance of a change in the law excuses counsel's failure to object at trial, we consider the 'state of the law as it would have appeared to competent and knowledgeable counsel at the time of the trial.' " (*People v. Black* (2007) 41 Cal.4th 799, 811 (*Black*), quoting *People v. De Santiago* (1969) 71 Cal.2d 18, 23.) "The circumstance that some attorneys may have had the foresight to raise th[e] issue does not mean that competent and knowledgeable counsel reasonably could have been expected to have anticipated the high court's decision . . . ." (*Black*, at p. 812.)

At the time of Chavez's trial, *People v. Gardeley* (1996) 14 Cal.4th 605 and *People v. Montiel* (1993) 5 Cal.4th 877, 919 (*Montiel*) were controlling authority on expert testimony. *Gardeley* permitted a qualified expert witness to testify on direct examination to any sufficiently reliable hearsay sources used in formulation of the expert's opinion. (See *Gardeley*, at p. 618.) Consequently, "[c]ourts created a two-pronged approach to balancing 'an expert's need to consider extrajudicial matters,

and a jury's need for information sufficient to evaluate an expert opinion' so as not to 'conflict with an accused's interest in avoiding substantive use of unreliable hearsay.'" (*Sanchez, supra,* 63 Cal.4th at p. 679, quoting *Montiel,* at p. 919.) "Most often, hearsay problems [were] cured by an instruction that matters admitted through an expert go only to [the] basis of the opinion and should not be considered for their truth. [Citation.] [¶] Sometimes a limiting instruction [was] not . . . enough. In such cases, Evidence Code section 352 authorize[d] the court to exclude from an expert's testimony any hearsay matter whose irrelevance, unreliability, or potential for prejudice outweighs its proper probative value." (*Montiel,* at p. 919.)

After Chavez's trial, *Sanchez* found that "this paradigm is no longer tenable because an expert's testimony regarding the basis for an opinion *must* be considered for its truth by the jury." (*Sanchez, supra,* 63 Cal.4th at p. 679.) *Sanchez* explained that "[w]hen any expert relates to the jury case-specific out-of-court statements, and treats the content of those statements as true and accurate to support the expert's opinion, the statements are hearsay. It cannot logically be maintained that the statements are not being admitted for their truth." (*Id.* at p. 686.) "If an expert testifies to case-specific out-of-court statements to explain the bases for his [or her] opinion, those statements are necessarily considered by the jury for their truth, thus rendering them hearsay. Like any other hearsay evidence, it must be properly admitted through an applicable hearsay exception. Alternatively, the evidence can be admitted through an appropriate witness and the expert may assume its truth in a properly worded hypothetical question in the traditional manner." (*Id.* at p. 684, fn. omitted.) *Sanchez* clarified that an "expert may still *rely* on hearsay in forming an opinion, and may

tell the jury *in general terms* that he did so" (*id*. at p. 685), that is, the expert may "relate generally" the "kind and source of the 'matter' upon which his opinion rests" (*id*. at p. 686).

*Sanchez* consequently disapproved *Gardeley* "to the extent it suggested an expert may properly testify regarding case-specific out-of-court statements without satisfying hearsay rules." (*Sanchez*, *supra*, 63 Cal.4th at p. 686, fn. 13.) *Sanchez* also disapproved "prior decisions concluding that an expert's basis testimony is not offered for its truth, or that a limiting instruction, coupled with a trial court's evaluation of the potential prejudicial impact of the evidence under Evidence Code section 352, sufficiently addresses hearsay and confrontation concerns." (*Ibid*.) Specifically, *Sanchez* disapproved *People v. Bell* (2007) 40 Cal.4th 582, 608; *Montiel*, *supra*, 5 Cal.4th at pp. 918–919; *People v. Ainsworth* (1988) 45 Cal.3d 984, 1012; *People v. Milner* (1988) 45 Cal.3d 227, 238–240; and *People v. Coleman* (1985) 38 Cal.3d 69, 91–93.

*Sanchez* thus expressly changed the law previously established by *Gardeley* and *Montiel*. " ' "[W]e have excused a failure to object where to require defense counsel to raise an objection 'would place an unreasonable burden on defendants to anticipate unforeseen changes in the law and encourage fruitless objections in other situations where defendants might hope that an established rule of evidence would be changed on appeal.' " ' " (*Edwards*, *supra*, 57 Cal.4th at p. 705.) We therefore hold that the failure of Chavez's counsel to object at trial before *Sanchez* was decided did not forfeit a claim on appeal based upon *Sanchez*. The great weight of authority below is consistent with this ruling. (See, e.g., *People v. Flint* (2018) 22 Cal.App.5th 983, 996–997; *People v. Hall* (2018) 23 Cal.App.5th 576, 602, fn. 10; *Conservatorship of K.W.* (2017) 13 Cal.App.5th

1274, 1283; *People v. Jeffrey G.* (2017) 13 Cal.App.5th 501, 507–508; *People v. Meraz* (2016) 6 Cal.App.5th 1162, 1170, fn. 7.)

This ruling is also consistent with our numerous decisions holding that a defendant need not predict subsequent substantive changes in law in order to preserve objections. (See *People v. Chavez* (1980) 26 Cal.3d 334, 350, fn. 5 [failure to object to the admissibility of prior inconsistent statements did not forfeit claim because a number of appellate cases had upheld the admissibility of such statements in the face of similar challenges]; *In re Gladys R.* (1970) 1 Cal.3d 855, 861 [failure to object to trial court's reading of social services report prior to the jurisdictional hearing in a juvenile court proceeding did not forfeit issue because a subsequent appellate decision interpreted the controlling statutes "in a manner contrary to the apparently prevalent contemporaneous interpretation"].)

The Attorney General, however, argues that three confrontation clause cases decided before Chavez's trial, *Williams v. Illinois* (2012) 567 U.S. 50 (*Williams*), *People v. Dungo* (2012) 55 Cal.4th 608 (*Dungo*), and *People v. Lopez* (2012) 55 Cal.4th 569 (*Lopez*), provided grounds for objection, and therefore objection at trial would not have been futile.

By its terms, the confrontation clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." (U.S. Const., 6th Amend.) In 2004, the high court "adopted a fundamentally new interpretation of the confrontation right" (*Williams*, *supra*, 567 U.S. at p. 64) and held that "[w]here testimonial evidence is at issue," the confrontation clause "demands what the common law required: unavailability and a prior opportunity for cross-examination." (*Crawford v. Washington* (2004) 541 U.S.

36, 68.)  Relevant here, statements that are not offered for their truth do not implicate the confrontation clause.  (*Id.* at p. 59, fn. 9; accord, *People v. Blacksher* (2011) 52 Cal.4th 769, 808, fn. 23.)  While *Gardeley* was decided before *Crawford*, every Court of Appeal to address the issue in a published decision after *Crawford*, but before *Sanchez*, continued to rely on *Gardeley* to reject a confrontation clause challenge.  Each of these decisions found, contrary to our subsequent decision in *Sanchez*, that expert basis evidence was not offered for its truth.  (See *People v. Hill* (2011) 191 Cal.App.4th 1104, 1127–1128 (*Hill*); *People v. Sisneros* (2009) 174 Cal.App.4th 142, 153–154; *People v. Cooper* (2007) 148 Cal.App.4th 731, 746–747; *People v. Fulcher* (2006) 136 Cal.App.4th 41, 57; *People v. Thomas* (2005) 130 Cal.App.4th 1202, 1209–1210.)

Subsequently, in *Williams*, the high court held in a four-one-four decision that a lab technician's testimony regarding work performed by another lab was not admitted to prove the truth of the matter and, alternatively, the underlying outside lab report, which was not admitted into evidence, was not testimonial.  (*Williams*, *supra*, 567 U.S. at pp. 57–58, 62, 69–86 (plur. opn. of Alito, J.).)  However, while the plurality opinion found that the testimony did not violate the confrontation clause, *Williams* "called into question the continuing validity of relying on a not-for-the-truth analysis in the expert witness context," because between the concurrence and the dissent "[f]ive justices . . . specifically rejected this approach."  (*Sanchez*, *supra*, 63 Cal.4th at p. 682.)  Justice Thomas concurred narrowly in the judgment on the ground the outside lab report was not testimonial, but he "share[d] the dissent's view of the plurality's flawed analysis."  (*Williams*, *supra*, 567 U.S. at p. 104 (conc. opn. of Thomas, J.); see *id.* at pp. 109–118.)  Notably, he

found that the challenged testimony was admitted for its truth. (*Id.* at pp. 104–109.) Justice Kagan, joined by three other justices in dissent, found both that the statements were testimonial and that the challenged testimony was admitted for its truth. (*Id.* at pp. 125–132 (dis. opn. of Kagan, J.).)

Our court then applied *Williams* in the companion cases of *Dungo* and *Lopez*. *Dungo* held the confrontation clause was not violated when an expert testified about objective facts concerning the condition of the victim's body as recorded in an autopsy report and autopsy photos. (*Dungo, supra*, 55 Cal.4th at pp. 612–615, 621.) Neither the autopsy report, which a nontestifying pathologist had prepared, nor the photographs were admitted into evidence. (*Id.* at p. 612.) Justice Kennard, in the majority opinion, reasoned that the evidence was not testimonial, but she did not discuss whether the expert's basis testimony was offered for its truth. (*Id.* at p. 621.) Justice Werdegar, in a concurring opinion that three other justices joined, also opined that physical observations from the autopsy report were not testimonial. (*Id.* at p. 627 (conc. opn. of Werdegar, J.).) In the process, she commented that those "observations were introduced for their truth." (*Id.* at p. 627.) In dissent, Justice Corrigan, joined by Justice Liu, concluded that the expert's "description of [the victim's] body, drawn from the hearsay contained in [the] autopsy report, violated defendant's right to confront and cross-examine [the autopsy doctor]." (*Id.* at p. 647 (dis. opn. of Corrigan, J.).) Justice Corrigan noted that "[f]ive justices explicitly repudiated th[e] analysis" in the *Williams* plurality that "[the outside lab] report was not hearsay at all because its contents were not admitted for their truth." (*Id.* at p. 635.)

*Lopez* held that a lab report with defendant's blood alcohol concentration results did not violate the confrontation clause. (*Lopez, supra,* 55 Cal.4th at pp. 582–585.) The analyst who prepared the report did not testify, but a colleague testified about it and the report was admitted into evidence. (*Id.* at pp. 573–574.) Justice Kennard for the majority reasoned that while a notation in the report linking defendant's name to a particular blood sample "was admitted for its truth," the notation was not testimonial. (*Id.* at p. 584.) Justice Kennard observed that in *Williams,* "[l]ike Justice Thomas in his concurrence, the dissent rejected the *Williams* plurality's conclusion that [the expert's] testimony about the report was not admitted for the truth of the matters asserted in the report." (*Id.* at p. 580.) In dissent, Justice Liu found that "the records at issue here, including the analyst's notations linking defendant to the lab record in question, are testimonial. [Citation.] Because the statements were introduced through a surrogate with no personal knowledge of those facts, they were offered in violation of the confrontation clause." (*Id.* at pp. 602–603 (dis. opn. of Liu, J.).)

Based upon these decisions, the Attorney General contends that counsel had grounds to object to *Gardeley* before we decided *Sanchez* because a majority of the justices on our court and the high court had reasoned that, at least in certain circumstances, testimony concerning the factual basis of an expert's opinion was considered for its truth. The Attorney General argues that even before we issued *Sanchez,* Courts of Appeal found that if our court or the high court "were called upon to resolve this issue, it seems likely" that cases finding "out-of-court statements offered as expert basis evidence are not offered for their truth for confrontation purposes will be

significantly undermined." (*People v. Valadez* (2013) 220 Cal.App.4th 16, 32 (*Valadez*); accord, *People v. Landau* (2016) 246 Cal.App.4th 850, 869; *People v. Miller* (2014) 231 Cal.App.4th 1301, 1311–1312; *People v. Mercado* (2013) 216 Cal.App.4th 67, 89 & fn. 6; *Hill, supra*, 191 Cal.App.4th at p. 1132, fn. 18.)

Nevertheless, we did not expressly hold until *Sanchez* that "[w]hen any expert relates to the jury case-specific out-of-court statements, and treats the content of those statements as true and accurate to support the expert's opinion, the statements are hearsay." (*Sanchez, supra*, 63 Cal.4th at p. 686.) And *Sanchez* marked a "paradigm" shift in that a limiting instruction was no longer an effective method of avoiding hearsay problems in an expert's basis testimony. (*Id.* at p. 679.) Indeed, no justice expressly disapproved *Gardeley* in either *Dungo* or *Lopez*, despite it being a staple of our decisional law. (See *In re Ruedas* (2018) 23 Cal.App.5th 777, 801, fn. 9 ["*Gardeley* alone was cited in over 2,000 appellate decisions between the time it was decided in 1996 and the time *Sanchez* was decided in 2016"].) We then continued to cite *Gardeley* with approval after *Dungo* and *Lopez*. (See *People v. Prunty* (2015) 62 Cal.4th 59, 89 (conc. & dis. opn. of Cantil-Sakauye, C. J.) ["A witness testifying in the form of an opinion may state on direct examination the basis for his or her opinion"]; *People v. Jones* (2013) 57 Cal.4th 899, 951 ["expert testimony can be based on a wide variety of information so long as it is reliable"].) Furthermore, at the time of Chavez's trial, *Edwards* was our most recent decision regarding expert testimony relating case-specific hearsay. (See *Edwards, supra*, 57 Cal.4th at pp. 706–707.) *Edwards*, like *Dungo* and *Lopez*, did not overrule *Gardeley*, and the *Edwards* majority stressed that

it was not persuaded by the *Dungo* dissent.  (*Id.* at p. 707, fn. 13.)

"The decisions of this court are binding upon and must be followed by all the state courts of California."  (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)  Until we overruled *Gardeley*, a lower court applying precedent would have, under that case, overruled a case-specific hearsay objection to expert basis testimony.  Indeed, our colleagues in the Courts of Appeal repeatedly and expressly stated that they were bound to follow *Gardeley* in the years leading up to *Sanchez*.  (See, e.g., *Hill, supra,* 191 Cal.App.4th at p. 1131 ["our position in the judicial hierarchy precludes [rejecting *Gardeley*]; we must follow *Gardeley* and the other California Supreme Court cases in the same line of authority"]; accord, *In re Thomas* (2018) 30 Cal.App.5th 774, 763; *People v. Leon* (2016) 243 Cal.App.4th 1003, 1016; *Valadez, supra,* 220 Cal.App.4th at p. 32, fn. 13.)  Such a request in a trial court would therefore have been futile.  (See, e.g., *People v. Sandoval* (2007) 41 Cal.4th 825, 837, fn. 4 [request for a jury trial on aggravating circumstances "clearly would have been futile" when then-existing law required the trial court to deny the request and "was binding on the lower courts until it was overruled by the high court"]; *People v. Gallardo* (2017) 4 Cal.5th 120, 128 [in dicta questioning "whether defendant should be made to bear the burden of anticipating potential changes in the law based on the reasoning of a United States Supreme Court opinion addressed to the proper interpretation of a federal statute not at issue here"].)

The Attorney General suggests forfeiture can occur whenever the argument is not "legally foreclosed," or the law is "unsettled," in an "odd state of flux," or when the high court has

not "squarely held as much in a majority opinion," or when it is just a " 'restoration' [citation] of a legal principle that over the years had become 'blurred.' " The Attorney General cites cases that said this court might be prepared to overrule *Gardeley* in the future. (See, e.g., *Valadez, supra*, 220 Cal.App.4th at p. 32.) The Attorney General cites cases from other states to show where the law was trending. The Attorney General argues that counsel was required to object because the grounds for objection were "not foreclosed by existing law."

This, however, is beyond what we have required and too amorphous a standard to place on trial counsel. "The circumstance that some attorneys may have had the foresight to raise this issue does not mean that competent and knowledgeable counsel reasonably could have been expected to have anticipated the high court's decision . . . ." (*Black, supra*, 41 Cal.4th at p. 812.) Asking attorneys at the trial level to predict that our court might in the future overrule its prior precedent — or risk forfeiting constitutional claims of their clients — simply requires too much. (See *People v. Champion* (1995) 9 Cal.4th 879, 908, fn. 6 ["Because the question whether defendants have preserved their right to raise this issue on appeal is close and difficult, we assume [they] have preserved their right, and proceed to the merits"].) It likewise burdens trial courts with ruling on objections they have little power to sustain unless and until contrary authority is overruled. If objection would be futile under current precedent, counsel is not obligated to object on pain of forfeiture simply because a future change in the law might be foreseeable. Here, *Gardeley* was still binding on lower courts at the time of Chavez's trial and therefore, a trial court applying this precedent would have overruled the objection.

In an alternative argument, the Attorney General contends that even before *Sanchez*, litigants could "seek to exclude testimony by an expert that would have impermissibly related case-specific hearsay to juries, relying both on the hearsay rule and on section 352 of the Evidence Code." It is undoubtedly true that Chavez could have objected under Evidence Code section 352 based on "whether the jury could properly follow the court's limiting instruction in light of the nature and amount of the out-of-court statements admitted." (*Sanchez, supra,* 63 Cal.4th at p. 679.) However, an objection under Evidence Code section 352 is completely different from a *Sanchez* objection that the expert has "relate[d] as true case-specific facts asserted in hearsay statements." (*Sanchez*, at p. 686.) Thus, the *specific* objection *Sanchez* contemplated would have been futile under *Gardeley* and its progeny unless a defendant could additionally show that the statements the expert related were excessive, inflammatory, or confusing, regardless of whether they were case-specific. (See, e.g., *People v. Coleman* (1985) 38 Cal.3d 69, 93 [court abused its discretion by allowing "extensive questioning of the expert witnesses" regarding letters written by the victim].) Our decision in *Sanchez* therefore meant that, for the first time, it was no longer futile to object to case-specific expert basis testimony that was not excessive, inflammatory, or confusing.

For the reasons stated above, we conclude that the Court of Appeal improperly found that Chavez forfeited his claim on appeal based upon *Sanchez* by failing to object at a trial occurring before *Sanchez* was decided. The Court of Appeal here reached the same conclusion as *People v. Blessett* (2018) 22 Cal.App.5th 903, 925–941. We disapprove *Blessett* to the extent that it is inconsistent with this decision.

## III. DISPOSITION

The judgment of the Court of Appeal is reversed, and the cause remanded for further proceedings consistent with this opinion.

**GROBAN, J.**

**We Concur:**

**CANTIL-SAKAUYE, C. J.**
**CHIN, J.**
**CORRIGAN, J.**
**LIU, J.**
**CUÉLLAR, J.**
**KRUGER, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** People v. Perez
_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 22 Cal.App.5th 201
**Rehearing Granted**

_____

**Opinion No.** S248730
**Date Filed:** February 27, 2020
_____

**Court:** Superior
**County:** San Bernardino
**Judge:** John M. Tomberlin

_____

**Counsel:**

Raymond Mark DiGuiseppe, under appointment by the Supreme Court, for Defendant and Appellant Jose Luis Perez.

Rebecca P. Jones, under appointment by the Supreme Court, for Defendant and Appellant Edgar Ivan Chavez Navarro.

Randall Bookout, under appointment by the Supreme Court, and Henry Russell Halpern for Defendant and Appellant Pablo Sandoval.

Kamala D. Harris and Xavier Becerra, Attorneys General, Edward DuMont, State Solicitor General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Michael R. Johnsen and Joshua Patashnik, Deputy State Solicitors General, Scott C. Taylor and Kristen Kinnaird Chenelia, Deputy Attorneys General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Rebecca P. Jones
3549 Camino del Rio S., Suite D
San Diego, CA 92108
(619) 269-7872

Joshua Patashnik
Deputy Solicitor General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
(415) 510-3896