Filed 4/13/21  P. v. Dehaven CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>v.<br><br>BRANDON ALLEN DEHAVEN,<br><br>  Defendant and Appellant. | E074449<br><br>(Super. Ct. No. ICMBCRF20196347<br><br>OPINION |

APPEAL from the Superior Court of Inyo County.  Dean T. Stout, Judge. Affirmed.

Jeffrey S. Kross, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Michael Pulos and Joy Utomi, Deputy Attorneys General, for Plaintiff and Respondent.

1

I.

INTRODUCTION

A jury convicted, defendant and appellant, Brandon Dehaven of conspiring with his girlfriend, Candace Martinez, to steal lottery tickets from a convenience store where Candace was employed.[1] The jury found defendant guilty of felony conspiracy to commit petty theft (Pen. Code, §§ 182, subd. (a), 484, 488; count 1),[2] and misdemeanor receiving stolen property (§ 496, subd. (a); count 2). The trial court granted defendant's motion to reduce count 1 from a felony to a misdemeanor under section 17, subdivision (b). The court further suspended imposition of sentence for 36 months, granted defendant probation, and ordered him to serve 60 days in county jail. The court also ordered defendant to pay various fines, fees, and assessments.

Defendant appeals his misdemeanor convictions for conspiracy to commit petty theft and receiving stolen property. He contends the trial court abused its discretion in allowing a police officer to testify as to what the officer believed defendant said in a convenience store surveillance video (audio video). We disagree and affirm the judgment.

---

[1] Candace is not a party to this appeal.

[2] Unless otherwise noted, all statutory references are to the Penal Code.

FACTS

R.J. owned Sinclair Dino Gas Mart (Dino Mart), a gas station and convenience store in Bishop.  On January 22, 2019, at 2:00 a.m., R.J.'s nephew, who was monitoring the store's 24-hour surveillance video cameras, called R.J.'s son and reported that someone had stolen lottery tickets from Dino Mart.  The nephew said the theft occurred when the employee working at the time went outside the store and another employee who was not on duty walked in and stole the lottery tickets.

The surveillance videos show Candace making two trips behind the store counter, during which she steals seven lottery tickets.  No one other than Candace and defendant are in the store at the time.  The surveillance videos were shown to the jury and entered into evidence.

A.  *Surveillance Videos*

1.  Dino Mart Videos (Exhibit 1)

Exhibit 1 consists of two Dino Mart surveillance videos.  The first video does not include audio.

a.  Behind the Register Cam 2

The first video shows Candace walk in the store at 1:44 a.m., quickly walk behind the main counter, take two or three lottery tickets, put the tickets in her front sweatshirt pocket, walk around to the front of the counter.  Defendant walks up to Candace near the candy aisle and appears to say something to her.  Candace looks toward the door, walks

in the direction of the door, and then turns around and runs toward the counter. Defendant disappears down the candy aisle. Candace runs behind the counter, grabs more lottery tickets, puts them in her sweatshirt pocket, and walks to the front of the counter as the on-duty store clerk enters the store and approaches Candace.

### b. Candy Aisle Cam 3

The second video included in Exhibit 1 shows the same incident depicted in the first video described above but the video is taken from a different angle by a different surveillance camera. Also, the second video is the only video provided which includes audio. The audio is somewhat muffled. Right after Candace's first theft of lottery tickets, defendant can be heard saying, "What the hell, You got them that fast?" Defendant's other statements are not quite as clear. The store entry-door bell can be heard whenever someone opens or closes the store's entry door. The bell can be heard ringing while Candace is behind the counter stealing lottery tickets the first time. A reasonable inference can be made the bell rang when defendant entered the store.

### 2. Dino Mart South Candy Aisle Cam 4 (Exhibit 5)

Exhibit 5 consists of a silent video which shows the same incident depicted in the other two videos described above but is taken from a different angle by a different surveillance camera focused on the candy aisle.

4

3. Chevron Gas Station and Convenience Store Videos (Exhibit 6)

Exhibit 6 includes three videos, which do not have audio.

a. Chevron Car Video

The first video shows defendant and Candace at the Chevron station, pulling up to a gas pump in a small white car.  Defendant exits the passenger side and walks toward the Chevron convenience store.  Defendant returns to the car a few minutes later and gets in the car.  Candace exits the driver's side of the car, walks toward the Chevron store, returns a minute later, and gets back in the car on the driver's side.  Defendant gets out of the car and pumps gas in the car.

b. Defendant Redeeming Lottery Tickets at Chevron Store

The second Chevron surveillance video shows defendant enter the store, select a few items, and hand the clerk at the counter three lottery tickets.  The clerk returns one ticket, which defendant leaves on the counter, keeps the other two tickets, and gives defendant some cash.  Defendant leaves and the clerk discards the ticket left on the counter.

c. Candace Inside Chevron Store

The third video is taken from a different angle inside the Chevron store.  The video shows defendant redeeming the lottery tickets at the counter and leaving as Candace walks in the store.  Candace gets a straw and leaves the store.

5

B. *R.J.'s Testimony*

R.J. testified as to what he observed in the Dino Mart videos. R.J. identified Candace in the videos and stated she was a Dino Mart employee at the time. Her shift ended earlier that night at 11:00 p.m. R.J. testified that Candace told the on-duty employee that she returned to clock out because she forgot to do so at the end of her shift. R.J. checked the store records and they showed this was not true. Candace had actually clocked out at the end of her shift.

R.J. further testified that Candace stole seven $30 lottery tickets. R.J. concluded defendant and Candace were together in the store while Candace stole the tickets. Defendant was about 10 feet away. R.J. stated that in one of the videos defendant was looking around, appearing to watch the entry door to make sure no one was entering the store. No one else was in the store during that time.

R.J. stated that, after he watched the videos, he contacted law enforcement, met with Bishop Police Officer Hohenstein, and provided the officer with the surveillance videos. R.J. then went to a nearby Chevron gas station where he thought Candace might redeem the lottery tickets. The Chevron store manager, J.S., told him two or three of the stolen lottery tickets were redeemed there. At trial, R.J. identified the three tickets. R.J. retrieved one of the non-winning lottery tickets which had been discarded at the Chevron store. R.J. believed the ticket was one of the tickets stolen from his store based on the ticket's serial number.

C. *Officer Hohenstein's Testimony*

6

Officer Hohenstein testified at trial that he was dispatched to the Dino Mart on January 22, 2019.  R.J. told him a store employee had stolen seven $30 lottery tickets from behind the counter.  Hohenstein watched four or five Dino Mart surveillance videos with R.J.  During the trial, Hohenstein described what he saw and heard while watching the four or five videos.  Officer Hohenstein stated that in the audio video he heard defendant say to Candace, after she grabbed the first batch of lottery tickets, "'What the hell, you got them that fast?'"  Officer Hohenstein also testified that, before Candace rushed back to grab more tickets, defendant looked towards the door, looked back at Candace, and said, "'I'll look out.'"

On cross-examination, Officer Hohenstein stated the audio was "perfectly clear" as to the first statement.  He said he was "100 percent sure" defendant said on the video, "'What the hell, you got them that fast?'"  Officer Hohenstein further explained that his testimony during the preliminary hearing differed slightly as to what defendant said because his preliminary hearing testimony was based solely on his recollection.

Officer Hohenstein met with R.J. again on January 27, 2019, for the purpose of questioning Candace. Officer Hohenstein ultimately arrested Candace. During the second visit, Officer Hohenstein learned that R.J. had gone to the Bishop Creek Chevron station and the clerk had given R.J. the discarded lottery ticket that defendant left on the counter. Officer Hohenstein then contacted J.S. at Bishop Creek Chevron. She gave him the two winning lottery tickets that defendant had turned in and the receipt for defendant's purchases and lottery ticket reimbursement. J.S. also provided three Chevron surveillance videos.

## III.

## ADMISSIBILITY OF OFFICER'S TESTIMONY

Defendant contends the trial court committed prejudicial error by allowing Officer Hohenstein to testify as to what he heard defendant say on the Dino Mart audio video. Defendant argues this was error because the jurors could determine for themselves what was said in the video.

Defendant filed a motion in limine to exclude a proposed transcript of the audio video. Defendant argued the transcript should be excluded because the audio of defendant's statements is unclear. Therefore, the trier of fact should determine what was said. Defendant's audio video statements are relevant to whether he conspired with Candace to steal the lottery tickets. During the hearing on the motion in limine, defendant also argued that the transcript should be excluded under Evidence Code section 352, as being more prejudicial than probative. The trial court, which had not listened to

the audio video, tentatively granted defendant's motion to exclude the transcript. The court stated that the jury would be permitted to hear the audio video, and counsel could argue whatever they believed was said.

During the trial, the audio video was played for the jury. The jury was not provided a transcript of the audio. Officer Hohenstein testified he watched the audio video and described what he saw and heard.

On appeal, defendant objects to Officer Hohenstein testifying defendant made the following two statements in the audio video: (1) "'What the hell, you got them that fast?,'" which defendant said right after Candace's first theft of lottery tickets, and (2) "'I'll look out,'" which defendant stated right before Candace ran behind the counter a second time and stole more tickets. The audio of the second statement is more difficult to decipher than the first statement.

After Officer Hohenstein testified to defendant's first statement, defense counsel objected on the ground Officer Hohenstein's testimony as to what was said was improper opinion. The court overruled the objection on the ground asserted by the prosecutor that it was a statement by a party opponent. Officer Hohenstein then testified as to defendant's second statement. Defense counsel did not reassert his former objection.

A. *Forfeiture*

The People argue as a threshold matter that defendant forfeited his objection to defendant's second statement, "I'll look out," because defense counsel did not object to it. Normally, a judgment will not be reversed due to the erroneous admission of evidence

9

unless an objection to the evidence was timely made. (Evid. Code, § 353, subd. (a); *People v. Zamudio* (2008) 43 Cal.4th 327, 354; *People v. Seijas* (2005) 36 Cal.4th 291, 302 ["In accordance with this statute, we have consistently held that the 'defendant's failure to make a timely and specific objection' on the ground asserted on appeal makes that ground not cognizable."].)

We conclude there was no forfeiture of defendant's objection to the second statement because defendant raised the objection to the first statement, which was made right before the second statement. Given the court overruled defendant's objection to the first statement, any subsequent objection to Officer Hohenstein's testimony regarding what he believed defendant had stated in the audio video likely would have been futile. (*People v. Perez* (2020) 9 Cal.5th 1, 7-8, quoting *People v. Brooks* (2017) 3 Cal.5th 1, 92 ["'"Reviewing courts have traditionally excused parties for failing to raise an issue at trial where an objection would have been futile . . . ."'"].) We thus conclude defendant's objection to the first statement was sufficient as to the second statement for purposes of preserving on appeal the issue of whether the trial court erred in allowing Officer Hohenstein to testify as to what he believed defendant said during the Dino Mart audio video.

B. *Admissibility of Officer Hohenstein's Testimony*

Defendant argues Officer Hohenstein's testimony as to what defendant said during the audio video was inadmissible opinion testimony. Defendant asserts that, because the audio was very poor and therefore it was unclear as to what defendant actually said, the

10

jury, as trier of fact, should have decided what defendant said, without Officer Hohenstein stating his opinion as to what was said. We agree Officer Hohenstein did not qualify as an expert in deciphering inaudible video audio. We also agree that the jurors were capable of listening to what defendant said during the audio video and deciding for themselves what was said.

Nevertheless, we conclude the trial court did not abuse its discretion in allowing Officer Hohenstein to testify as a lay witness regarding what he believed he heard while watching the audio video. "A lay witness may offer opinion testimony if it is rationally based on the witness's perception and helpful to a clear understanding of the witness's testimony." (*People v. Leon* (2015) 61 Cal.4th 569, 601; see also Evid. Code, § 800.) Officer Hohenstein's perception of what he believed he heard defendant say in the audio video was relevant to Officer Hohenstein's description of his investigation of the lottery ticket theft and his perception of defendant's involvement as a potential conspirator. The court therefore did not abuse its discretion in allowing Officer Hohenstein to testify as to what he believed defendant said in the audio video.

C. *Harmless Error*

Even assuming the trial court abused its discretion in allowing Officer Hohenstein to testify as to what defendant said during the audio video, defendant fails to demonstrate prejudicial error. Defendant's first statement was sufficiently clear such that the jurors could independently hear and understand what defendant said. It is also reasonably probable the jurors concluded that Officer Hohenstein's testimony as to the first

11

statement was accurate based on the jurors listening to the video audio. Thus, even in the absence of Officer Hohenstein's testimony regarding the first statement, it is reasonably probable the jury would have construed the first statement as Officer Hohenstein did.

Although defendant's second statement was not as clear, it is reasonably probable the jury would have found defendant guilty of conspiracy based on defendant's first statement, the Dino Mart videos, the Chevron videos, and the retrieved stolen lottery tickets. The Dino Mart videos show defendant and Candace entering Dino Mart within 30 seconds of each other. Within seconds of their entry, Candace comes out from behind the counter after the first lottery ticket theft, meets up with defendant, briefly converses with him, looks toward the entry door, rushes back behind the counter again, and steals more lottery tickets. A reasonable inference can be made that defendant knew Candace had just stolen lottery tickets and that, after Candace briefly mentioned the theft to defendant, Candace was persuaded to steal more lottery tickets. Defendant's conspiracy in stealing the lottery tickets is also supported by Dino Mart video of defendant furtively glancing at toward the entry door, and the Chevron videos recorded that same day showing defendant redeeming two of the stolen lottery tickets and leaving a third stolen lottery ticket on the counter.

The jury had the opportunity to independently view the videos and make its own factual determinations of what defendant said and did. The prosecutor and defense attorney reminded the jurors during closing argument that the jury was the "ultimate decider" as to what defendant said in the videos. Based on overwhelming evidence of

12

defendant's guilt, we conclude that any error in the trial court allowing Officer Hohenstein's testimony regarding what he believed defendant said in the audio video was harmless error. It is not reasonably likely the trial outcome would have been more favorable to defendant had the challenged testimony been excluded. (*People v. Watson* (1956) 46 Cal.2d 818, 836.)

IV.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

RAMIREZ
P. J.

SLOUGH
J.

13