Filed 11/10/25  P. v. Rios CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>RICARDO RIOS,<br><br>Defendant and Appellant. | F088061<br><br>(Super. Ct. No. 4001700)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Stanislaus County.  Carrie M. Stephens, Judge.

Martin Baker for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Darren K. Indermill and Angelo S. Edralin, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

# INTRODUCTION

Following a jury trial, defendant Ricardo Rios was found guilty of first degree murder (Pen. Code,[1] § 187, subd. (a); count I) and arson (§ 451, subd. (d); count II), after stabbing his neighbor over 130 times, and then setting the victim's vehicle on fire in an attempt to cover up evidence of the murder. At a second guilt phase of the trial, the jury found defendant was sane when he committed the crimes. During a bifurcated bench trial, the court found beyond a reasonable doubt defendant had suffered a prior conviction for first degree burglary (a strike) within the meaning of the Three Strikes law (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)) and for purposes of an enhancement allegation under section 667, subdivision (a).

At the sentencing hearing, the trial court imposed a determinate term of four years for the arson on count II (§§ 451, subd. (d), 667, subd. (e)(1)) plus an indeterminate term of 50 years to life for the murder (§§ 187, subd. (a), 189, subd. (a), 667, subd. (e)(1)), and a one-year enhancement for the use of a deadly weapon (§ 12022, subd. (b)(1)). The court struck the prior serious conviction enhancement alleged under section 667, subdivision (a), but declined to dismiss defendant's prior strike conviction for purposes of the Three Strikes law.

On appeal, defendant argues the trial court weighed irrelevant aggravating factors in determining the low-term presumption under section 1170, subdivision (b)(6), was overcome on count II. As defendant's sentencing claim was forfeited by failing to object on this basis at the sentencing hearing below, we affirm.

---

[1] All statutory references are to the Penal Code unless indicated otherwise.

# FACTUAL BACKGROUND[2]

***Summary of Guilt Phase Evidence and Jury Verdict***

On November 12, 2016, the City of Turlock Fire Department was dispatched to a vehicle fire. The fire crew found an SUV with smoke coming from its passenger side. A civilian who discovered the fire had used a fire extinguisher before the fire crew arrived, but the fire was fully extinguished by the fire crew. On examination, fire personnel found what appeared to be a large amount of blood dripping onto the passenger side running board. The keys to the vehicle were discovered underneath the vehicle, and the vehicle was registered to Pedro Ruiz (the victim) at an address in Turlock.

An assessment of the vehicle disclosed three points of origin for the fire; the driver's side floorboard; an area close to the driver's side door; and an area close to the center console. The fire appeared to have been set intentionally using leaves and newspaper. A search of the vehicle yielded a bloody knife found on the passenger side floorboard, and a piece of an object shaped like a dragon found on the front passenger seat.

Given the vehicle's condition, police proceeded to make a security check on the victim at his residence. When no one answered at the victim's apartment door, police proceeded inside the apartment to complete the security check. They found no one inside the apartment and no signs of a struggle, but there were indicia the victim lived there. Other residents in the complex had seen the victim and defendant together earlier that day. With reason to believe defendant was involved in whatever had happened, police performed a security check at defendant's apartment, which was in the same building as the victim. Defendant's parents, who also lived in the apartment, were at home, and upon a search, police found defendant hiding in one of the back bedrooms. A search of

---

**2** As a full recitation of the trial evidence is not necessary to resolve the sentencing claim presented on appeal, only a truncated summary of the trial evidence is provided.

defendant's apartment revealed the victim's cell phone inside a wallet case with the victim's driver's license in it. There appeared to be some blood on the case. Defendant was arrested and later released.

The next day, the victim's body was discovered in an orchard less than four miles from the burned SUV. The victim had been stabbed over 100 times and appeared to have been dragged into the orchard. Tire tracks in the dirt near the body matched the tire treads on the burned SUV, and the tracks suggested to police the SUV had been moved after the body was dumped so that the headlights would illuminate the area. A small, dragon-shaped object was found in blood between the edge of the orchard and the body.

Police returned to defendant's apartment to rearrest him, and he was found hiding in some scaffolding. Police retrieved a trash bag from the apartment containing a black T-shirt with a red stain, a bandana, dark-colored tennis shoes, and a sheath to a small sword. The design of the sheath matched the dragon-shaped object found near the victim's body.

In a recorded police interview on November 15, 2016, which was played for the jury, defendant told police that he got a ride from the victim and was in the passenger seat of the victim's SUV when the victim stopped driving and attacked him with a machete. Defendant told police he defended himself with a knife in each hand, and after stabbing the victim, defendant pushed him into the passenger seat before disposing of his body in the orchard. Defendant admitted using leaves, paper and matches to light the SUV on fire because it was "dirty." He admitted to removing his clothing and the shoes he had worn and placing them in a white plastic bag in the closet at his apartment.

The shoes found at defendant's apartment matched the shoeprints in the orchard near the body, and the victim was a "major contributor" to the DNA found on the bloody knife recovered from the SUV and the shirt found in defendant's apartment. A pathologist found the victim had been stabbed 138 times. Video surveillance at defendant's apartment complex showed him leaving around 6:00 p.m. on November 12,

4.

2016, and returning around 8:47 p.m.—47 minutes after the SUV fire was reported. The walking distance from the fire to defendant's apartment was 2.1 miles and would take about 40 minutes to walk.

The jury returned a verdict finding defendant guilty of first degree murder; found true the allegation the murder was willful, deliberate and premeditated; and found true a deadly weapon enhancement allegation. The jury also found defendant guilty of arson.

***Summary of Sanity Phase Evidence and Jury Verdict***

After the initial verdict on the first phase of the trial, a second sanity phase of the trial began. The defense presented testimony from forensic psychologist Richard Blak, Ph.D., who diagnosed defendant with schizophrenia and posttraumatic stress disorder (PTSD). Dr. Blak opined that appellant did not know the quality and nature of his acts, nor could he distinguish right from wrong, at the time of the crime because of a mental defect or disease.

The People presented testimony from clinical and forensic psychologist John Chellsen, Ph.D. Chellsen opined defendant had a psychotic disorder not otherwise specified and a history of PTSD; but he noted defendant was not exhibiting signs or symptoms of a schizophrenia-spectrum disorder and did not report experiencing command hallucinations at the time of the offense. In his opinion, defendant was capable of understanding the nature and quality of his actions when he stabbed the victim, and that he was aware of the wrongfulness of those actions.

The jury found defendant sane when he committed the offenses. In a bifurcated court trial, the trial court found true beyond reasonable doubt defendant had been convicted of a serious offense for purposes of the prior serious conviction enhancement allegation and the Three Strikes allegation.

***Sentencing***

At a sentencing hearing on May 6, 2024, the court declined to strike the prior strike conviction pursuant to section 1385, subdivision (a), but struck the five-year prior

serious conviction enhancement.  The court sentenced defendant to 50 years to life for the murder (25 years to life doubled for the prior strike), plus one year for the deadly weapon enhancement; and imposed the middle term for the arson offense (doubled for the prior strike offense) for a total of four years to be served consecutively.  The aggregate sentence imposed was five years determinate, plus 50 years to life.

## DISCUSSION

### I. Imposition of the Middle Term for Arson Conviction

Defendant argues the trial court abused its discretion by not imposing the lower term on count II for arson because the court considered and balanced aggravating factors that were relevant only to the murder and not the arson offense.  The People argue this claim is forfeited on appeal because no objection was made during the sentencing hearing.  On the merits, the People maintain the court did not abuse its discretion and any error was harmless.

### A. Standard of Review

"We review discretionary sentencing decisions for abuse of discretion."  (*People v. Knowles* (2024) 105 Cal.App.5th 757, 764, citing *People v. Sandoval* (2007) 41 Cal.4th 825, 847, abrogated on a different ground in *People v. Lynch* (2024) 16 Cal.5th 730, 759.)  "A court abuses its sentencing discretion when it acts arbitrarily and capriciously, relies on improper matter in reaching its decision, or is unaware of the scope of its discretion so that it does not exercise informed discretion at all."  (*Knowles, supra*, at p. 765, citing *People v. Panozo* (2021) 59 Cal.App.5th 825, 837.)

"We presume that the trial court acted to achieve legitimate sentencing objectives. [Citation.]  The burden is on the party challenging the sentencing decision to show that the court abused its discretion.  [Citation.]  We may not presume error from a silent record.  [Citation.]  'Unless the record affirmatively demonstrates otherwise, the trial court is deemed to have considered all the relevant sentencing factors set forth in the

rules.'" (*Knowles, supra*, 105 Cal.App.5th at p. 765, quoting *People v. Parra Martinez* (2022) 78 Cal.App.5th 317, 322 & citing Cal. Rules of Court, rule 4.409.)[3]

## B. Additional Background

At the sentencing hearing, the court first explained it would provide the parties with the sentence it intended to impose, so that any arguments could be framed around that tentative. In doing so, the court explained that it had considered defendant suffered from "significant mental health issues" that were "absolutely apparent … throughout the trial .…" The parties' attorneys indicated they did not wish to be heard on that issue, and the court proceeded to give a detailed explanation of its sentencing decisions. The court explained, in relevant part, as follows:

> "There are circumstances in aggravation pursuant to Rule … 4.421(a), the following factors exist: [rule 4.421]([a])(1), the crime involved great violence and great bodily harm; [rule 4.421](a)(2), the defendant was armed and used a weapon; [rule 4.421](a)(8), the manner in which the crime was carried out indicates planning, sophistication or professionalism.
>
> "Factors relating to the defendant as described by … rule [4.421] in (b)(1) are that the defendant engaged in violent conduct that indicates a serious danger to society; [rule 4.421](b)(2), the defendant's prior convictions as an adult or sustained petitions in juvenile delinquency proceedings are numerous or of increasing seriousness; [rule 4.421](b)(3), the defendant has served a prior term of prison or county jail under … Section 1170[, subdivision ](h).
>
> "The following circumstances in mitigation, pursuant to Rule … 4.423(a), factors relating to the crime are: that the defendant participated in the crime under circumstances of coercion or duress, or the criminal conduct was partially excusable for some other reason not amounting to a defense. And in this case the defendant did have significant mental health issues.
>
> "Factors relating to the defendant are Rule … 4.423(b)(2), the defendant was suffering from a mental or physical condition that significantly reduced his culpability for the crime; [rule 4.423](b)(3), the

---

[3] Further references to rules are to the California Rules of Court unless otherwise indicated.

commission of the current offense is connected with the defendant's mental health issues as defined by … Section 1385[, subdivision ](c); [rule 4.423](b)(4), multiple enhancements are alleged in a single case; [rule 4.423](b)(5), an enhancement is based on a prior conviction that is over five years old. And in this case it was barely over five years old; and by that I mean the [section] 667[, subdivision ](d) prior and the [section] 667[, subdivision ](a) prior.

"The aggravating factors do, however, outweigh these mitigating factors. The Court cannot sentence the defendant to the aggravat[ed term] for Count 2, however, because those aggravating factors were not pled or proven at the jury trial.

"The court recognizes it has authority to strike the [section] 667[, subdivision ](d) prior pursuant to … Section 1385. If the Court finds, in light of the nature and circumstances of his present felony and prior serious and/or violent felony convictions, the particulars of the defendant's background, character and prospects, that defendant is deemed outside the spirit in whole or in part of the three strikes law. [¶] The defendant is not outside the spirit in whole or in part of the three strikes law. [¶] … [¶]

"He had a history of mental health disease, however. According to Dr. Chellsen he suffered from a psychotic disorder, not otherwise specified, and PTSD.

"Dr. [Chellsen] opined defendant's actions were not primarily the product of a psychiatric issue—of his psychiatric issues rather.

"Dr. Baik [*sic*] opined the defendant suffered from schizophrenia and [PTSD] at the time of the homicide, and believed the defendant was legally insane at the time of his offenses.

"The PTSD diagnosis stems from three gunshot wounds to his abdomen when he was 23 or 24 years old.

"The defendant had a prior misdemeanor conviction in 2010 for violating Vehicle Code Section 14601.1.

"He had a misdemeanor domestic violence related conviction in 2012 for which he was sentenced to five days in jail.

"And the felony strike conviction was for a violation of … Section 459 for which he was sentenced to 24 months in prison.

"The defendant is, as I said earlier, not outside the three strikes law in spirit—in whole or in [part]. The circumstances of the present murder are extreme. He stabbed an entirely innocent person who was a neighbor

giving him a ride to the store more than a hundred times.  The act was significant not only for its violence, but for the defendant's attempt to hide it and destroy evidence.  The prior strike was only five and a half years earlier.  For these reasons, the Court declines to strike the [section] 667[, subdivision ](d) prior."

The court then sentenced defendant to 25 years to life for the murder, doubled for the prior strike, plus a one-year enhancement under section 12022, subdivision (b)(1), for the use of a weapon.  For the arson conviction, the court sentenced defendant to a consecutive middle term of two years, doubled to four years for the prior strike.  The court struck the section 667, subdivision (a), enhancement under section 1385 "because the current offense is connected to the defendant's mental health," and the court concluded dismissal would not endanger public safety.  The court concluded by asking whether anyone had "anything that they need to say?  Clarification requested?"  The prosecutor requested the court give an advisement to defendant about the nature of the offenses committed, which the court did.  No further objection or request for clarification was made.

### C.    The Sentencing Claim is Forfeited

Defendant argues two of the aggravating factors the trial court identified (the violence of the crime and the use of a weapon) were not relevant to the crime of arson, and thus the court did not properly find the aggravating factors outweighed the mitigating factors for purposes of overcoming the low-term presumption under section 1170, subdivision (b)(6).  The People contend defendant's sentencing claim was forfeited because defendant's trial counsel made no objection at the sentencing hearing.  Defendant maintains his trial counsel had no meaningful opportunity at the hearing to object to how the trial court weighed the aggravating factors because the court gave its reasons for doing so after it asked whether the parties wished to be heard.

"'A party in a criminal case may not, on appeal, raise "claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices" if the

9.

party did not object to the sentence at trial. [Citation.] The rule applies to "cases in which the stated reasons allegedly do not apply to the particular case, and cases in which the court purportedly erred because it double-counted a particular sentencing factor, misweighed the various factors, or failed to state any reasons or give a sufficient number of valid reasons .…"'" (*People v. Scott* (2015) 61 Cal.4th 363, 406.) "Strong policy reasons support this rule: 'It is both unfair and inefficient to permit a claim of error on appeal that, if timely brought to the attention of the trial court, could have been easily corrected or avoided. [Citations.]' [Citation.] ""'The law casts upon the party the duty of looking after his legal rights and of calling the judge's attention to any infringement of them. If any other rule were to obtain, the party would in most cases be careful to be silent as to his objections until it would be too late to obviate them, and the result would be that few judgments would stand the test of an appeal.'"'"" (*People v. Stowell* (2003) 31 Cal.4th 1107, 1114; accord, *People v. Salazar* (2016) 63 Cal.4th 214, 239–240; *People v. French* (2008) 43 Cal.4th 36, 46.)

"'[D]iscretion to excuse forfeiture should be exercised rarely and only in cases presenting an important legal issue.'" (*In re Sheena K.* (2007) 40 Cal.4th 875, 887–888, fn. 7.) Absent a change in the law that applies retroactively (e.g., *People v. Stamps* (2020) 9 Cal.5th 685, 698–699), or an extenuating circumstance such as futility (e.g., *People v. Perez* (2020) 9 Cal.5th 1, 7–8), neither of which is applicable here, the policy reasons underlying the forfeiture doctrine fully support its application where a defendant remains silent in the trial court when sentenced and then seeks to obtain appellate relief based on asserted sentencing errors.

At the sentencing hearing, there was no objection to the aggravating factors the trial court considered, and we are unpersuaded defendant's trial counsel had no meaningful opportunity to do so. The trial court provided its reasons for the sentence imposed, and then asked whether anyone had anything they "need[ed] to say? Clarification requested?" The prosecutor took the opportunity to seek a serious felony

advisement, which the court provided. There was, therefore, a sufficient opportunity for defense counsel to make any objection regarding the sentence imposed and/or the trial court's stated reasoning. Having had an opportunity to object and bring the matter to the trial court's attention, the failure to do so forfeited the claim of sentencing error for purposes of appeal.

## DISPOSITION

The judgment is affirmed.


MEEHAN, J.

WE CONCUR:


LEVY, Acting P. J.


PEÑA, J.