Filed 7/21/21  P. v. Aikens CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RAFAEL ARI AIKENS,<br><br>    Defendant and Appellant. | E073943<br><br>(Super.Ct.No. FMB17000171)<br><br>OPINION |

APPEAL from the Superior Court of San Bernardino County.  Rodney A. Cortez, Judge.  Affirmed.

Ronda G. Norris, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Senior Assistant Attorney General, and Eric A. Swenson and Michael D. Butera, Deputy Attorneys General, for Plaintiff and Respondent.

While defendant was in bed with his sometime girlfriend, he shot her in the head twice, killing her.  Her mother came running to her bedroom; he shot her five times,

1

killing her, too. He then entered the bedroom where the girlfriend's 10-year-old daughter was lying in bed, terrified. Defendant had run out of bullets. However, he pointed the gun at the child and told her, "Shut up and go to sleep." She responded falsely, "I'm only six," so he would think she did not know how to call 911 and would not hurt her. He seemed to be looking for something on her dresser. Then he left.

Defendant was a Marine stationed on the base in Twentynine Palms. The next day, he told a fellow Marine that he had killed two people. He asked a different fellow Marine to take his gun home and to clean it. He added, "If I told you [why], you wouldn't believe me. . . . Just know it's to the first degree." One bullet and one bullet casing found at the scene were both fired from defendant's gun.

The killer took the girlfriend's cell phone away with him. The police later tracked its movement from her home to the Marine base. The daughter's description of the killer did not entirely match defendant. However, she identified defendant at trial. The motive for the killing is unknown.

Defendant took the stand and explained or denied most of the evidence against him. For example, he claimed that he gave his gun to his friend on the day *before* the shooting. However, he was impeached with his inconsistent statements to the police.

A jury found defendant guilty of two counts of first-degree murder (§§ 187, subd. (a), 189),[1] with enhancements for intentionally discharging a firearm and causing death (§ 12022.53, subd. (d)) and with a multiple murder special circumstance (§ 190.2, subd.

---

[1]     These and all further statutory citations are to the Penal Code.

(a)(3)). He was sentenced to two consecutive terms of life without the possibility of parole, plus two consecutive terms of 25 years to life, along with the usual fines, fees, and ancillary orders.

Defendant contends:

1. The prosecutor committed misconduct by impugning defense counsel's integrity in closing argument.

2. The trial court erred by imposing a $10,000 restitution fine without holding a hearing on defendant's ability to pay.

Finding no error, we will affirm.

# I

# IMPUGNING DEFENSE COUNSEL

Defendant contends that the prosecutor committed misconduct by impugning defense counsel's integrity in closing argument.

A.    *Additional Factual and Procedural Background.*

In his rebuttal closing argument, the prosecutor said:

"[T]he instruction on witnesses becomes important. . . . Because the defense put up, most importantly, the defendant himself. And so you make a decision, who do you believe? You look at things, and the instruction tells you, like, demeanor. . . .

"Look at the defendant's demeanor when he was talking to his attorney. Did you notice the play that was acted out up here? Did you notice that as he heard questions, there were particular ones that he turned and looked all the way down? And did you see

3

his demeanor with me?  It changed.  'Cause his direct examination was a play, a rehearsed play to try to get him out of this."

Defense counsel objected that this was "improper argument."  When the trial court overruled the objection, he added, "He's saying it about me, your Honor."  The trial court adhered to its ruling.  Defense counsel said, "I'd like to be heard after [the prosecutor]'s through."

After the jury was sworn and retired, the trial court heard further argument. Defense counsel said, "I think he was saying that I suborn perjury.  That I gave him a story, rehearsed it, and put him up for a story."  The trial court disagreed; it said, "I didn't take it the way you took it, that he was impugning you.  I took it as he was impugning the testimony as being rehearsed by your client."  It deemed defense counsel to have made a motion for a mistrial, which it denied.

B.  *Discussion.*

The People do not contend that defense counsel forfeited this contention.  He did object, and doughtily.  While he did not request an admonition, "the failure to make such a request is excusable where, as here, the defendant's objection is immediately overruled. [Citation.]"  (*People v. Bordelon* (2008) 162 Cal.App.4th 1311, 1323.)

"It is misconduct for the prosecutor in argument to impugn the integrity of defense counsel or to suggest defense counsel has fabricated a defense.  [Citations.]"  (*People v. Cash* (2002) 28 Cal.4th 703, 732.)

4

"'To prevail on a claim of prosecutorial misconduct based on remarks to the jury, the defendant must show a reasonable likelihood the jury understood or applied the complained-of comments in an improper or erroneous manner. [Citations.] In conducting this inquiry, we "do not lightly infer" that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements.' [Citation.]" (*People v. Seumanu* (2015) 61 Cal.4th 1293, 1337.)

"We review the trial court's rulings on prosecutorial misconduct for abuse of discretion. [Citation.]" (*People v. Peoples* (2016) 62 Cal.4th 718, 792–793.)

Here, the trial court — having had the benefit of sitting through the trial, including the closing arguments — concluded that the prosecutor had impugned defendant, but not defense counsel. This was not an abuse of discretion.

The prosecutor made the remarks during a discussion of witness credibility and demeanor. He did not even refer to defense counsel, except when he said, "Look at *the defendant's demeanor* when he was talking to his attorney." (Italics added.) He then pointed out that defendant's demeanor changed on cross-examination. This just meant that defendant did not expect his own attorney to challenge his concocted story; it did not mean that his attorney had had a hand in concocting it.

His references to "a rehearsed play" and "the play that was acted out up here" are most readily understood as meaning that *defendant* had rehearsed and *defendant* was acting out a play. Even if defendant had gone over his testimony in advance with his

counsel, that would not mean defense counsel knew defendant's answers were *false*. The jury would have understood that these remarks did not implicate defense counsel.

Defense counsel had previously argued that, even though defendant lied to the police, he testified truthfully on the stand: "He took an oath to tell the truth when he took the stand. That's a different ball game . . . . Grilled for a couple of hours yesterday. Grilled some more today to tell you the truth. . . . [H]e did that because he wanted to look you in the eye and tell you, I did not kill those two women." It was appropriate for the prosecutor to argue, in rebuttal, that defendant's demeanor as a witness showed that he was untruthful. To the extent that the prosecutor's remarks were ambiguous, the trial court could properly accept the more charitable interpretation.

Two cases are closely analogous, both named *People v. Williams*.

In *People v. Williams* (2013) 56 Cal.4th 630, the prosecutor said, "'I gave a lot of thought on how to proceed in my closing argument. I had a hard time sleeping last night because part of me really wants to come in here and *attack the defense for the methods which they used to try and mislead you, deceive you, give you false insinuations.* And I started by writing out all the things *that he had done from the beginning in his opening statement, from the defendant, all the way back to when he started trying to falsify evidence.*'" (*Id*. at p. 672.)

The Supreme Court held that this was not misconduct: "Importantly, . . . the prosecutor was referring to actions of both *defendant* and defense counsel. Although his syntax was a bit awkward, the reference to falsifying evidence encompassed defendant's

6

actions or actions that might reasonably be attributed to defendant." (*People v. Williams*, *supra*, 56 Cal.4th at p. 672.) It noted that witnesses had testified that the defendant had asked them to fabricate or to destroy evidence. (*Ibid.*) It concluded: "The prosecutor's comments about defendant's efforts to falsify evidence were founded on evidence in the record and fell within the permissible bounds of argument. [Citation.]" (*Ibid.*)

In *People v. Williams* (2016) 1 Cal.5th 1166, the prosecutor pointed out that the defendant had told police he did not know the victim; he contrasted this with defense counsel's assertion in opening statement that the defendant had had consensual sex with the victim, who was then killed by a third party. (*Id.* at pp. 1187-1188.) He then said: "'What can we find, because that first one he wants to use doesn't work. We got to scramble to find something else. And that's what we heard about from the defense, the second best defense. Jesus, Williams, why didn't you come up with the best one the first time. I thought I did. But he didn't." (*Id.* at p. 1188.)

The Supreme Court held: "The prosecutor's comments did not cast aspersions on defense counsel or imply that he was dishonest. Indeed, the prosecutor's comments did not even reference defense counsel, but instead focused on defendant's changing story. Thus, the comments were meant 'to vigorously challenge the validity of [the] defense,' given the clearly contradictory evidence and unsupported facts the defense presented. [Citation.]" (*People v. Williams*, *supra*, 1 Cal.5th at p. 1189.)

As compared to the remarks in *Williams* and *Williams*, the prosecutor's remarks here were even less susceptible to a meaning that impugned defense counsel. Accordingly, the trial court did not abuse its discretion.

II

THE IMPOSITION OF A RESTITUTION FINE

WITHOUT A HEARING ON ABILITY TO PAY

Defendant contends that the trial court erred by imposing a $10,000 restitution fine (§ 1202.4) without holding a hearing on his ability to pay. Because his trial counsel did not object to the fine, he also contends that this omission constituted ineffective assistance of counsel.

Defense counsel forfeited the first contention by failing to object below. (*People v. Torres* (2020) 47 Cal.App.5th 984, 991; see generally *People v. Scott* (1994) 9 Cal.4th 331, 353.) This is not a case in which the failure to object can be excused on the ground that an objection would not have been supported by the law as it then stood. (See generally *People v. Perez* (2020) 9 Cal.5th 1, 7.) Defendant's contention is founded on *People v. Dueñas* (2019) 30 Cal.App.5th 1157. *Dueñas* was decided in January 2019; defendant was sentenced in October 2019. Moreover, even before *Dueñas*, a defendant could object to the amount of a restitution fine, above the $300 minimum, based on inability to pay. (*People v. Case* (2018) 5 Cal.5th 1, 53.)

Defendant's second contention also fails because we cannot say there could be no satisfactory explanation for defense counsel's failure to object.

"To demonstrate ineffective assistance of counsel, [defendant] 'must show that counsel's performance was deficient, and that the deficiency prejudiced the defense.' [Citation.]  On direct appeal, a finding of deficient performance is warranted where '(1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation.'  [Citation.]  '[W]here counsel's trial tactics or strategic reasons for challenged decisions do not appear on the record, we will not find ineffective assistance of counsel on appeal unless there could be no conceivable reason for counsel's acts or omissions.'  [Citation.]"  (*People v. Johnsen* (2021) 10 Cal.5th 1116, 1165.)

For all we know, defendant did have the ability to pay, and moreover, defense counsel knew it.  Defense counsel was retained, not appointed, raising a suspicion that defendant could pay a substantial amount.  Nevertheless, the trial court declined to award presentence investigation costs, finding that defendant could not pay them.  Defense counsel may have reasoned that, if he objected to the restitution fine, the trial court might find that defendant had the ability to pay both.

III

DISPOSITION

The judgment appealed from is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.


We concur:

McKINSTER
J.

RAPHAEL
J.