Filed 7/27/22  P. v. Villalpando CA3
Opinion following transfer from Supreme Court

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

|  |  |
|---|---|
| THE PEOPLE, | C087324 |
| Plaintiff and Respondent, | (Super. Ct. No. 16FE002927) |
| v. | OPINION ON TRANSFER |
| MACARIO VILLALPANDO, |  |
| Defendant and Appellant. |  |

This case returns on transfer from the California Supreme Court.

A jury found defendant Macario Villalpando guilty of second degree murder and also found true the allegation that defendant personally used a firearm during the commission of that crime, resulting in the victim's death.  The trial court sentenced defendant to serve an aggregate term of 40 years to life in state prison.

On appeal, defendant contends there was insufficient evidence of malice to support his murder conviction.  He also contends the prosecutor committed prejudicial

1

error by misstating the law of involuntary manslaughter, a lesser included offense, during closing argument, thereby reducing the People's burden of proof on the murder charge. Finally, defendant contends the trial court abused its discretion in refusing to reduce the sentence imposed on the firearm enhancement.

In an unpublished opinion, we affirmed the judgment. (*People v. Villalpando* (July 14, 2020, C087324) [nonpub. opn.].) The Supreme Court granted review and transferred the matter back to us with directions to vacate our decision and reconsider the cause in light of *People v. Tirado* (2022) 12 Cal.5th 688 (*Tirado*). On transfer, defendant contends the matter must be remanded for resentencing because the trial court did not understand its discretion to impose a lesser enhancement. The People contend remand is not warranted because defendant forfeited that claim by failing to raise it at sentencing. Defendant has the better argument.

The parties do agree, if we remand the matter for resentencing, the trial court should consider the recent amendments to Penal Code section 1385,[1] made by Senate Bill No. 81 (2021-2022 Reg. Sess.). We will remand the matter for resentencing.

BACKGROUND

### *Underlying Facts/Charges*

The victim and his girlfriend, L.A., lived together on the same property where L.A. worked for a towing company. The victim sold methamphetamine from a shed on that property. Sometime between 9:00 p.m. and 10:00 p.m. on February 7, 2016, L.A. went out to the shed to ask the victim if he wanted something to eat. The door to the shed was open, the television was on, and the victim was seated behind a desk. Defendant was standing to the side of the desk.

---

[1]     Undesignated statutory references are to the Penal Code.

Defendant and L.A. said hello to each other. L.A. knew defendant because defendant's brother and the victim were friends. Defendant had been to their home a few times before, with his brother. The day before, defendant came over and brought some potted palms. The victim told L.A. he would be up to the house in five minutes. L.A. walked back to the house.

No more than 10 minutes later, L.A. heard a gunshot and she heard the victim yell her name. As she ran toward the shed, she saw defendant walking toward the property's gate. Defendant got into a vehicle parked near the fence and backed away. The victim was lying on his stomach half in and half out of the shed door. He later died from blood loss from a shotgun wound to his lower left abdomen.

Around 1:00 a.m. on February 8, 2017, defendant arrived at his sister-in-law's house. Wet and muddy, defendant appeared to be drunk. Defendant's brother picked defendant up around 2:00 a.m. or 3:00 a.m. and drove defendant to get his truck, which was parked down an embankment. Defendant got a bag from his truck and they went to get gas for his truck. On the way to get gas, defendant took bullets and three small vials containing a clear liquid out of the bag and threw them on the road. After putting gas in defendant's truck, his brother followed him home.

The following day, defendant was interviewed by sheriff's detectives. He initially denied being involved in the victim's death. Defendant acknowledged they were friends and said he gave the victim some potted palms over the weekend. Defendant also admitted he had a problem with drugs and alcohol. He said he used to go to the victim's to drink but he did not want to talk about the victim selling drugs.

When the detectives told defendant his family was upset about what he had done, defendant admitted to the shooting but said it was an accident. He went there to sell the victim the gun, he did not know it was loaded, and "[i]t fired." He got nervous and ran " 'cause I owed him money." He demonstrated how the victim was holding the gun and dropped it, suggesting the stock of the shotgun hit the ground, and that caused the gun to

3

fire. Defendant told deputies he threw the shotgun in the river then ran out of gas on his way home. He said, again, it was not intentional and was afraid he would "lose his papers."

The People charged defendant with murder (§ 187) and alleged "that pursuant to subdivisions (b), (c) and (d) of . . . Section 12022.53, and in the commission and attempted commission of the above offense(s), the defendant, . . . used, and intentionally and personally discharged a firearm, to wit, a shotgun,[] and thereby proximately caused great bodily injury or death to [the victim], who was not an accomplice of the defendant, *within the meaning of . . . Section 12022.53* [*subdivision*] *(d)*." (Italics added.) Defendant pleaded not guilty and the matter was set for a jury trial.

### *Trial/Judgment/Sentencing*

At trial, Dr. Brian Nagao, a forensic pathologist from the Sacramento County Coroner's Office testified the entry wound on the victim's body was consistent with the muzzle of the gun being less than three feet away. He could not, however, determine whether the victim was sitting or standing when he was shot.

Defendant testified at trial. He said he drank alcohol daily and was smoking $50 or more of methamphetamine every week. He got his methamphetamine from the victim and they got along well. The victim would front defendant drugs if defendant did not have money, and he loaned defendant $100, which defendant paid back. Two weeks before he killed the victim, the victim helped defendant buy a shotgun.

On the day the victim was shot, defendant owed him $30 or $40. He had not fired the shotgun and believed it was worth more than $40. He thought the gun would pay off his debt to the victim and allow him to get more methamphetamine. They reached a deal for the shotgun and methamphetamine. Defendant had been drinking all day and he smoked "something" with the victim. As he handed the victim the gun, defendant testified, the gun went off. Scared, defendant left. He took the shotgun with him and

4

threw it in the river. Defendant did not tell his parents what happened when he got home because he was ashamed.

Three days later, defendant was arrested. He thinks in Spanish and is more comfortable speaking in Spanish, so he claimed to understand only some of the questions he was asked by detectives in English. He admitted to drinking the day of the interview. He also admitted to lying during the interview: he told detectives he was no longer using drugs, but he was. But, he testified, he did not lie about the victim's death being an accident; he did not "mean to kill [the victim]."

The trial court instructed the jury on the degrees of murder and involuntary manslaughter. With regard to the firearm enhancement, the jury was instructed to consider only whether the allegation was true under section 12022.53, subdivision (d).

The jury acquitted defendant of first degree murder but found him guilty of second degree murder. The jury also found true the allegation that "in the commission of the offense . . . [defendant] used and intentionally and personally discharged a firearm, to wit, a shotgun, thereby causing great bodily injury or death to [the victim] *within the meaning of . . . section 12022.53* [*subdivision*] *(d)* . . . ." (Italics added.)

At sentencing, defendant's counsel asked the trial court to strike "either the sentencing part of the [firearm enhancement] or the whole thing . . . ." The court denied his request: "If the court had been given some choices, like 10-to-life or 15-to-life or 25-to-life, I think the court would have thought seriously about imposing some lesser life term for the firearms use, but the Legislature hasn't done that, and so the question is[:] does [defendant] fit as a person that should be exempted[?] . . . I don't find that he was." The court sentenced defendant to serve an aggregate term of 40 years to life: 15 years to life for murder and 25 years to life for the firearm enhancement.

5

DISCUSSION

# I

## *Sufficiency of the Evidence*

Defendant contends the evidence was insufficient to support his conviction for second degree murder. In support of his contention, defendant argues the evidence was insufficient to establish malice. We disagree.

When presented with a claim of insufficient evidence, we examine the entire record to assess whether any rational trier of fact could have found defendant guilty beyond a reasonable doubt. (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.) Thus, "we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence. ([*People v.*] *Boyer* [(2006)] 38 Cal.4th [412,] 480.) 'Conflicts and even testimony [that] is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.] We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence. [Citation.]' ([*People v.*] *Maury* [(2003) 30 Cal.4th 342,] 403.) A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support" ' the jury's verdict. (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)" (*Ibid.*)

"Murder is the unlawful killing of a human being . . . with malice aforethought." (§ 187, subd. (a).) Malice aforethought may be express or implied. (§ 188.) " 'Express malice is an intent to kill. . . . Malice is implied when a person willfully does an act, the natural and probable consequences of which are dangerous to human life, and the person knowingly acts with conscious disregard for the danger to life that the act poses.' " (*People v. Beltran* (2013) 56 Cal.4th 935, 941-942.)

6

Second degree murder requires an intent to kill but does not require the same consideration and weighing that is required to convict a defendant of first degree murder. It occurs when a person intends to kill as the "result of mere unconsidered or rash impulse hastily executed." (*People v. Thomas* (1945) 25 Cal.2d 880, 900-901.) In other words, second degree murder occurs when the defendant intentionally kills, but his judgment has been obscured by strong emotion due to provocation, even though a person of ordinary disposition would not respond to the provocation with obscured judgment. (See *People v. Jones* (2014) 223 Cal.App.4th 995, 1000.)

Defendant shot the victim in the abdomen at close range, then left him there to die. Even knowing the victim's girlfriend was nearby, defendant did not summon for help or attempt to give aid to the victim. This is sufficient evidence from which the jury could conclude defendant intended to kill the victim. (*See People v. Koontz* (2002) 27 Cal.4th 1041, 1082 [firing a shot at a vital area of the body and preventing aid to the victim is evidence of intent to kill]; *see also People v. Smith* (2005) 37 Cal.4th 733, 741 [firing at close range " 'in a manner that could have inflicted a mortal wound had the bullet been on target is sufficient to support an inference of intent to kill' "].) Just because the circumstances may also reasonably support a different conclusion than the one drawn by the trier of fact does not warrant reversing the judgment. (*People v. Stanley* (1995) 10 Cal.4th 764, 792-793.)

We conclude there was sufficient evidence to support defendant's conviction for second degree murder.

## II

### *Prosecutorial Error*

Defendant contends the prosecutor committed prejudicial error by misstating the law of involuntary manslaughter, a lesser included offense, in closing argument. In doing so, defendant argues the prosecutor "shifted and lowered" the People's burden of proof as to second degree murder. Recognizing defense counsel did not object to this argument,

7

he also argues counsel was ineffective.  We conclude there was no error and reject defendant's claim for ineffective assistance of counsel.

## A.

### *Standard of Review*

" ' "To preserve a claim of prosecutorial [error] for appeal, a defendant must make a timely and specific objection and ask the trial court to admonish the jury to disregard the improper argument." ' " (*People v. Charles* (2015) 61 Cal.4th 308, 327, quoting *People v. Linton* (2013) 56 Cal.4th 1146, 1205.)  Defendant's trial attorney failed to preserve the issues of prosecutorial error by not objecting or requesting the jury be admonished as to any claimed error.

Recognizing the forfeiture problem, defendant argues his counsel was ineffective for failing to object.  " 'A defendant whose counsel did not object at trial to alleged prosecutorial [error] can argue on appeal that counsel's inaction violated the defendant's constitutional right to the effective assistance of counsel.' " (*People v. Centeno* (2014) 60 Cal.4th 659, 674.)  To establish ineffective assistance of counsel, defendant must show, by a preponderance of the evidence, that " '(1) counsel's representation fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's deficient performance was prejudicial, i.e., there is a reasonable probability that, but for counsel's failings, the result would have been more favorable to the defendant.' " (*People v. Johnson* (2015) 60 Cal.4th 966, 980.)

In evaluating an ineffective assistance of counsel claim on appeal, we presume, absent defendant's contrary showing, that " ' "counsel's performance fell within the wide range of professional competence and that counsel's actions and inactions can be explained as a matter of sound trial strategy." ' [Citations.]  When the record on direct appeal sheds no light on why counsel failed to act in the manner challenged, defendant must show that there was ' " 'no conceivable tactical purpose' " for counsel's act or omission.  [Citations.]' '[T]he decision facing counsel in the midst of trial over whether

8

to object to comments made by the prosecutor in closing argument is a highly tactical one' . . . [citations], and 'a mere failure to object to evidence or argument seldom establishes counsel's incompetence' [citation]." (*People v. Centeno, supra*, 60 Cal.4th at pp. 674-675.)

## B.

### *Additional Background*

During closing arguments, the prosecutor explained the elements of second degree murder and involuntary manslaughter. In so doing, he asserted the evidence did not support a finding of criminal negligence, an element of involuntary manslaughter. He described criminal negligence as a lawful act, conducted in an unlawful manner and used examples to illustrate what that meant. For example, it is lawful to shoot a gun, but to shoot a gun in a crowd of people would be unlawful. He also gave the example that, while it is lawful to drive a car, to drive a car recklessly is unlawful.

During closing argument, defense counsel argued the prosecutor failed to prove defendant guilty of murder or any of the lesser included offenses, arguing instead that the shooting was an accident. When addressing the lesser included offense of involuntary manslaughter, counsel said it was "a little harder to understand" than the first or second degree murder. He agreed with the prosecutor that, on these facts, involuntary manslaughter was not an option: "[The prosecutor] and I agree that it's not quite an involuntary because it was not done in an unlawful way, so I think we're left with first or second degree murder. [¶] . . . [¶] Involuntary manslaughter doesn't fit because it wasn't done in an unlawful manner, and it's more than ordinary careless inattention or mistake in judgment. It has to be actually reckless. When you are high, what seems reckless to you might not be reckless to someone else, but in any event, number one, the unlawful knocks out the involuntary manslaughter."

9

## C.

### *Analysis*

Defendant asserts the prosecutor committed error by arguing that "the failure of proof of criminal negligence foreclosed an involuntary manslaughter conviction, and that the default finding was second degree murder." Defendant does not include any citation to the record to support that assertion. When defendants do not provide adequate citations to the record, the court is not obligated to search the record and thus can deem challenges waived. (*People v. Smith* (2015) 61 Cal.4th 18, 48.)

Defendant nevertheless goes on to argue that the prosecutor's argument was a misstatement of the law because "a finding of criminal negligence was a necessary element of implied malice." Defendant does not support that assertion with any citation to relevant legal authority. However, he argues this misstatement of the law resulted in the prosecutor diminishing the People's burden of proof and "implying" it was defendant's "burden to prove involuntary manslaughter." We are not required to address an issue raised without citation to relevant authority. (*People v. Hardy* (1992) 2 Cal.4th 86, 150.)

Defendant also maintains that trial counsel rendered ineffective assistance in "ratifying" the prosecutor's erroneous argument regarding involuntary manslaughter. He does not support that theory with any actual argument. We will not examine perfunctory claims or make arguments for parties. (*People v. Oates* (2004) 32 Cal.4th 1048, 1068, fn. 10.)

We conclude defendant has forfeited these arguments.

## III

### *Firearm Enhancement*

On transfer from the Supreme Court, defendant maintains the trial court did not believe it had the ability to reduce his firearm enhancement to an uncharged lesser

10

enhancement in lieu of striking it, and thus did not understand the scope of its sentencing discretion.

Section 12022.53 provides for a 10-year enhancement for the personal use of a firearm under subdivision (b); a 20-year enhancement for the personal and intentional discharge of a firearm under subdivision (c); and a 25-year-to-life enhancement for the personal and intentional discharge of a firearm causing great bodily injury or death under subdivision (d).

Effective January 1, 2018, the Legislature enacted Senate Bill No. 620 (2017-2018 Reg. Sess.), which amended section 12022.53, subdivision (h) to provide: "The court may, in the interest of justice pursuant to Section 1385 and at the time of sentencing, strike or dismiss an enhancement otherwise required to be imposed by this section." A trial court's refusal to dismiss a section 12022.53 enhancement is reviewed under the deferential abuse of discretion standard. (*People v. Pearson* (2019) 38 Cal.App.5th 112, 116.) "When being sentenced, a defendant is entitled to decisions made by a court exercising informed discretion. [Citation.] A court acting while unaware of the scope of its discretion is understood to have abused it." (*Tirado*, *supra*, 12 Cal.5th at p. 694.)

In *Tirado*, our Supreme Court recently held trial courts are not categorically prohibited from imposing a lesser enhancement, either charged or uncharged, if the prosecution has charged the greater enhancement and the facts supporting the lesser enhancement have been alleged and found true. (*Tirado*, *supra*, 12 Cal.5th at p. 697.) Thus, under the section 12022.53 statutory framework, it is now clear that trial courts are permitted to strike a subdivision (d) enhancement found true by the jury and to impose a lesser statutory enhancement instead. (*Tirado*, at p. 700.)

The People now agree the trial court acted without knowing it had discretion to impose a lesser enhancement, but nevertheless contend defendant forfeited the issue by failing to raise it at sentencing. We disagree.

Defendant was sentenced on June 8, 2018.  At the time of his sentencing, Senate Bill No. 620 had been in effect for a few months, but the contours of a trial court's authority under amended section 12022.53, subdivision (h) were unsettled.  *People v. Morrison* (2019) 34 Cal.App.5th 217, the first appellate case to address the possibility of imposing a lesser enhancement that was not separately found true, was decided in April 2019, nearly a year after defendant was sentenced.  And it is hardly obvious from subdivision (h)'s text that the authority to "strike or dismiss an enhancement otherwise required to be imposed" might include the ability to strike a greater enhancement and impose a lesser one that was not presented to the jury.  Defendant could not have anticipated that change in the law.  (See *People v. Perez* (2020) 9 Cal.5th 1, 8.)  As a result, he could not have forfeited his claim.

## DISPOSITION

Defendant's sentence, imposed on June 18, 2018, is vacated and the matter is remanded for resentencing so the trial court may exercise its discretion to strike the section 12022.53, subdivision (d) enhancement and impose a lesser included enhancement.  At resentencing, the trial court should also consider the impact of Senate Bill No. 81 on section 1385, and any other new sentencing laws that apply to defendant.


　　　　　　　　　　/s/
　　　　　　　　　　HOCH, J.


We concur:


 /s/
HULL, Acting P. J.


 /s/
DUARTE, J.


12