Filed 6/14/23  P. v. Delgado CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B319488 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. KA071098-01) |
| v. | |
| ALONSO DELGADO, | |
| Defendant and Appellant. | |

APPEAL from a postjudgment order of the Superior Court of Los Angeles County, David C. Brougham, Judge.  Affirmed.

Richard D. Miggins, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior

Assistant Attorney General, Michael C. Keller and Charles S. Lee, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Alonso Delgado was convicted following a jury trial in 2005 of second degree murder with true findings on criminal street gang and principal-use firearm enhancements and sentenced to an indeterminate state prison term of 40 years to life.  In March 2022, following an evidentiary hearing, the superior court denied Delgado's petition for resentencing pursuant to Penal Code section 1172.6 (former section 1170.95),[1] finding beyond a reasonable doubt that Delgado had acted with express malice when directly aiding and abetting the actual killer of Frankie Lopez and, therefore, remained guilty of murder under California law as amended by Senate Bill No. 1437 (Stats. 2018, ch. 1015) (Senate Bill 1437).

On appeal Delgado contends the superior court improperly relied on the factual summary in this court's opinion affirming his conviction (*People v. Delgado* (May 31, 2007, B187062) [nonpub. opn.]), the court's malice finding was not supported by substantial evidence and our 2007 affirmance of Delgado's conviction under the natural and probable consequences doctrine estopped the People from relying on a malice theory of murder. We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

1. *Delgado's Conviction for Second Degree Murder*

Lopez was shot and killed on the evening of December 25, 2004 in the hallway leading to the apartment he shared with his mother and sister.  The evidence at trial established that Lopez's

_____

[1]     Statutory references are to this code.

2

mother answered a knock on the door of the apartment and a young man, never identified, said he wanted to speak to Lopez. Lopez, who had been standing behind his mother when she opened the door, followed the man from the apartment, telling his mother he would be right back. From the doorway Lopez's mother saw Lopez walking down the hallway toward an alley with the unidentified man and Delgado.

Lopez's sister went into the hallway a few moments later and saw Lopez with Delgado near the porch at the end of the hallway. David Rodriguez was nearby. Lopez suddenly began running toward his sister, who heard two gunshots. After the first shot, which a neighbor described as a loud bang like a firecracker, the neighbor heard a voice from the hallway say, "Get him, dog. Get him." After the second shot was fired, Lopez fell to the ground. He died from a gunshot wound to the back of his head.

The People's theory of the case was that Lopez was shot in retaliation for an earlier, gang-related shooting of Rodriguez, who, like Delgado, was a Pomona Sur Trece gang member. Approximately three weeks prior to the Lopez shooting, Rodriguez had fought in the parking lot of Lopez's apartment building with Anthony Coronado, a member of the rival Azusa 13 gang, because Coronado had disrespected Rodriguez. Coronado lived off-and-on with Lopez's family. A week or two after the fight Rodriguez was shot in the back while he was at a park across the street from the apartment building. Lopez's sister testified she was outside just before Rodriguez got shot and saw Coronado cover his face with a bandana and run across the street to the park with a rifle. After Lopez's sister heard shots fired, Coronado ran back to Lopez's apartment, where he left the rifle.

Rodriguez told detectives that he knew there would be retaliation for his fight with Coronado.

In a tape-recorded police interview Delgado admitted he had gone to Lopez's door on December 25, 2004, but claimed he had walked back to the car and was opening the car door when the shooting occurred. He insisted he did not know the other men intended to shoot Lopez. Delgado told detectives the men, whom he described as his "homies," wanted Delgado to come with them to talk to Lopez because "Frankie had everything to do with all this that happened. . . . He was the main person they had to kill for every single thing. . . . The fool that shot [Rodriguez] wasn't even a concern." Delgado explained his fellow gang members' perspective, "Because if we take [Frankie] out, we don't got to worry about this fool coming over here no more doing that, cause Frankie can't call them and tell them yea sur trece is right there in the park. . . . Frankie can't do that no more. He can't shoot at us, and run and hide in Frankie's house until the police leave again, he can't do that no more." Delgado claimed Rodriguez had not been present during the incident but would not identify the individuals who were there. He also claimed his friends had told him they were not going to kill Lopez, but Delgado acknowledged he knew they were taking a gun and said to his friends, "You taking a gun for a reason."

The jury was instructed on first and second degree murder, express and implied malice, accomplice liability and murder as the natural and probable consequence of the target crime of misdemeanor assault. The jury found Delgado (and Rodriguez) not guilty of first degree murder, but guilty of second degree murder (§ 187, subd. (a)). It also found true special allegations a principal had intentionally discharged a firearm causing death

(§ 12022.53, subds. (d) & (e)(1)) and the murder had been committed for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)).

On appeal Delgado contended, in part, it was error to instruct the jury he could be convicted of murder as the natural and probable consequence of aiding and abetting a misdemeanor assault and there was insufficient evidence Lopez's murder was the natural and probable consequence of the assault. We rejected those arguments (as well as Delgado's contention his confession was involuntary) and affirmed the conviction. With respect to Delgado's instructional error argument, we held, "[a]lthough it may be correct in some instances a misdemeanor target offense is too petty to plausibly result in murder as the natural and probable consequence, it is the appropriate role of the jury to make this determination in light of all of the circumstances surrounding the incident. . . . The appropriate distinction is not between misdemeanors and felonies, but between trivial activities and non-trivial activities." As to the sufficiency of the evidence argument, we reviewed the People's evidence and concluded, particularly in light of the escalating violence between the two rival gangs, it was reasonably foreseeable Lopez's murder would result from the planned, armed confrontation with him.

2. *Delgado's Petition for Resentencing*

On June 19, 2020 Delgado, representing himself, filed a petition for resentencing under former section 1170.95. After the People filed a response, the superior court appointed counsel to represent Delgado. The People filed a supplemental response; Delgado's counsel filed a reply; and the People filed a second supplemental response. The court ruled Delgado had made a

5

prima facie case for relief and issued an order to show cause pursuant to section 1172.6, subdivision (c).

At the evidentiary hearing on March 7, 2022, after the court provided an overview of the procedural history of the case, the prosecutor asked the court to consider evidence "previously admitted at trial, including witnesses' testimony, stipulated evidence, and matters judicially noticed." The prosecutor also introduced "the procedural history of the case that was recited in the prior appellate opinion that confirmed Mr. Delgado's conviction" and "the preliminary hearing testimony provided in the court record, excluding any hearsay evidence that was admitted pursuant to section 872(b)." The prosecutor then confirmed she had no additional new evidence and rested. Delgado's counsel introduced a copy of a December 25, 2004 police report from the Pomona Police Department, and the court later admitted a 22-page PowerPoint document used by Delgado's counsel in her argument, which included excerpts of testimony from the preliminary hearing and trial.

After argument from counsel, the court concluded the evidence established beyond a reasonable doubt that Delgado was guilty of second degree murder as an aider and abettor. The court described the evidence of motive—the animosity of Rodriguez and Delgado's gang toward Lopez, who it believed was responsible for the attack on Rodriguez by a rival gang member— observing, "It was very clear from Mr. Delgado's comments to Detective Kono that the gang was very, very worked up and very, very animated about Frankie's role. That doesn't mean they weren't worked up or animated about Coronado's role also potentially, but specifically they were going to Frankie's house and they held Frankie responsible, whether it be for the fact that

he let Mr. Coronado, his friend, live there off and on in the past, whether it was because Mr. Coronado was seen running into his apartment after shooting Mr. Rodriguez a week and a half before across the street, or whether it be the belief that some had that Frankie was acting like a—as a lookout at the park from this apartment, the gang was very animated."

The court found that Delgado knew "how extremely animated the gang is against Frankie.  And so for me to believe that he was just going there to talk to the victim is really contrary to the whole testimony of the gang expert in trial as to what gangs are all about."  In addition, the court found that Delgado "played a critical role at the door in getting the victim out.  He lured the victim out to be executed a few minutes later by his very, very close friend in the hallway.  And to ask me to believe that after all those conversations, that after what I believe to be all of that trickery and luring the victim out, that he was just luring the victim out to talk and not with the intent to shoot is to defy any reasonable interpretations of the evidence."  Continuing, the court pointed out that Delgado "was the one in the gang that was known to the victim.  He knew how to act or what to say to get the victim to step out . . . .  He is essentially escorting the victim with the third unidentified man into the hands of Mr. Rodriguez. . . .  And so, in essence, you know, I find that he lured the victim out and delivered him into the hands of the shooter.  The conversation quickly went awry and what Mr. Rodriguez did was not a surprise.  It was consistent with the animated conversation leading up to the incident."  Based on the evidence before it, the court concluded the People had proved beyond a reasonable doubt that Delgado "is guilty of second

7

degree murder, unpremeditated intentional killing as an aider and abettor with the intent to kill."[2]

Delgado filed a timely notice of appeal.

## DISCUSSION

1. *Accomplice Liability for Murder and Section 1172.6*

Senate Bill 1437 modified the law relating to accomplice liability for murder, eliminating the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder (*People v. Gentile* (2020) 10 Cal.5th 830, 842-843) and narrowing the felony-murder exception to the malice requirement for murder. (§§ 188, subd. (a)(3), 189, subd. (e); see *People v. Strong* (2022) 13 Cal.5th 698, 707-708; *People v. Lewis* (2021) 11 Cal.5th 952, 957.) It also authorized, through former section 1170.95, an individual convicted of felony murder or murder based on the natural and probable consequences doctrine to petition the sentencing court to vacate the conviction and be resentenced on any remaining counts if he or she could not now be convicted of murder because of Senate Bill No. 1437's changes to the definitions of the crime. (See *Strong*, at p. 708; *Lewis*, at p. 957; *Gentile*, at p. 843.) As amended by Senate Bill No. 775 (Stats. 2021, ch. 551, § 2) (Senate Bill 775), these ameliorative changes to the law now expressly apply to attempted murder and voluntary manslaughter.

If the petition contains all the required information, including a declaration by the petitioner that he or she is eligible for relief (§ 1172.6, subd. (b)(1)(A)), the court must appoint

---

[2] The superior court found, in the alternative, the evidence established beyond a reasonable doubt that Delgado acted with implied malice when aiding and abetting the murder of Lopez.

counsel to represent the petitioner, if requested (§ 1172.6, subd. (b)(3)), and direct the prosecutor to file a response to the petition, permit the petitioner to file a reply and determine if the petitioner has made a prima facie showing that he or she is entitled to relief.  (§ 1172.6, subd. (c); see *People v. Lewis*, *supra*, 11 Cal.5th at pp. 962-963.)

When, as here, a petitioner has carried the burden of making the requisite prima facie showing he or she falls within the provisions of section 1172.6 and is entitled to relief, the court must issue an order to show cause and hold an evidentiary hearing to determine whether to vacate the murder conviction and resentence the petitioner on any remaining counts. (§ 1172.6, subd. (d)(1).)  At that hearing "the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019."  (§ 1172.6, subd. (d)(3).)  The court may consider evidence "previously admitted at any prior hearing or trial that is admissible under current law," including witness testimony.  The petitioner and the prosecutor may also offer new or additional evidence.  (*Ibid.*)

The superior court's decision to deny the petition after an evidentiary hearing, if the proper standard and burden of proof was applied, is reviewed for substantial evidence.  (*People v. Vargas* (2022) 84 Cal.App.5th 943, 951; *People v. Ramirez* (2021) 71 Cal.App.5th 970, 985; *People v. Hernandez* (2021) 60 Cal.App.5th 94, 113.)

9

2. *The Superior Court Did Not Rely on the Statement of Facts in the Prior Appellate Opinion*

As amended by Senate Bill 775, effective January 1, 2022, the admission of evidence at the hearing following issuance of an order to show cause pursuant to section 1172.6, subdivision (d)(3), is "governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed." Amended subdivision (d)(3) further provides, "The court may also consider the procedural history of the case recited in any prior appellate opinion."

Prior to Senate Bill 775's amendments expressly authorizing reliance on the procedural history of the case as stated in a prior appellate opinion, courts of appeal had generally held an opinion's summary of the evidence at the petitioner's trial was admissible at a hearing to determine whether the petitioner was entitled to resentencing relief as provided by Senate Bill 1437. (See, e.g., *People v. Williams* (2020) 57 Cal.App.5th 652, 661-662; see also *People v. Clements* (2022) 75 Cal.App.5th 276, 292.) After January 1, 2022 the courts of appeal have interpreted the amended language in section 1172.6, subdivision (d)(3), to mean, although the superior court may consider the procedural history as detailed in an appellate opinion, it may not (absent stipulation) consider the factual summary in the same opinion. (See, e.g., *People v. Cooper* (2022) 77 Cal.App.5th 393, 400, fn. 9 ["Senate Bill 775 prevents a trial court from relying on facts recited in an appellate opinion to rule on a petition under section 1170.95, as the statute now provides that 'the court may consider evidence previously admitted at any

10

prior hearing or trial that is admissible under current law' and 'the *procedural history* of the case recited in any prior appellate opinion'"]; *People v. Flores* (2022) 76 Cal.App.5th 974, 988 ["[f]urthermore, the factual summary in an appellate opinion is not evidence that may be considered at an evidentiary hearing to determine a petitioner's eligibility for resentencing"].)

Emphasizing that Senate Bill 775's amendments detailing the evidentiary requirements for a subdivision (d)(3) hearing were in effect at the time of his hearing in March 2022 (and, in any event, apply retroactively to appeals from denials of petitions for resentencing that were not final as of January 1, 2022), Delgado contends reversal is required because the superior court improperly relied on the factual summary in our 2007 opinion to find he had acted with express malice when aiding in the shooting of Lopez. Delgado's counsel, however, made no objection on that ground at the hearing. Even if the issue were not forfeited,[3] moreover, Delgado's argument lacks merit: There was no such reliance.

_____

[3] Delgado contends there was no forfeiture because, at the time of his hearing, the only case law discussing the evidentiary requirements for a subdivision (d)(3) hearing generally permitted reliance on the factual summary in a prior appellate opinion. But those cases were interpreting the pre-Senate Bill 775 version of former section 1170.95, subdivision (d)(3). While forfeiture is not appropriate when defense counsel failed to anticipate and object before a change in the law, as the Supreme Court held in *People v. Perez* (2020) 9 Cal.5th 1 (no forfeiture when counsel failed to object to gang expert testimony prior to the decision in *People v. Sanchez* (2016) 63 Cal.4th 665), an objection in March 2022, based on legislation effective January 1, 2022, would not have been futile if the superior court had, in fact, considered as evidence the factual summary from our 2007 opinion.

11

As discussed, at the hearing, before both parties had rested, the court recited the evidence it received and considered at the request of the prosecutor—the evidence admitted at trial; preliminary hearing testimony not including hearsay evidence admitted pursuant to section 872, subdivision (b); and the procedural history of the case as recited in our 2007 opinion. Two aspects of that list are noteworthy:  It does not include the factual summary from our 2007 opinion, and it tracks nearly verbatim the permissible evidence at the subdivision (d)(3) hearing as defined by the Legislature in Senate Bill 775.  There was no mention at any point during the hearing, either by the court or the prosecutor, of the factual summary from our decision affirming Delgado's conviction.[4]

But, Delgado argues, the facts recited by the superior court when questioning counsel and articulating the rationale for its ruling denying the petition "track to the facts set forth in the appellate opinion."  Of course they do.  The goal of a factual summary in an appellate opinion is to accurately describe the evidence at trial to the extent it is material to the issues presented on appeal.  While for some purposes (for example, substantial evidence review), we examine the evidence in a manner most favorable to the judgment (that is, to the People), here there was no dispute as to what Delgado said to the

---

[4]     To be sure, as Delgado points out, in responsive memoranda filed in the superior court in 2021 before Senate Bill 775's effective date, the prosecutor had argued reliance on the factual summary in our opinion was proper.  Those earlier references, however, simply make even more significant the omission of any similar discussion of our appellate opinion at the evidentiary hearing in March 2022.

investigating detective, the testimony of Lopez's mother and sister concerning the events leading to and immediately after the shooting or the neighbor's description of hearing "get him, dog." Our 2007 summary of that evidence and the superior court's description of it in 2022 should be the same. Indeed, Delgado does not even attempt to identify any way in which either summary was at odds with the evidence at trial. The superior court's inferences from that evidence—its conclusion the evidence proved beyond a reasonable doubt that Delgado acted with express malice in aiding the murder of Lopez—were that court's alone. There was no improper reliance on the prior 2007 appellate opinion.

3. *Substantial Evidence Supports the Court's Finding of Express Malice*

In his statement to law enforcement Delgado claimed he understood the men who asked him to go with them to Lopez's home just wanted to speak to Lopez and insisted he had no knowledge they intended to kill Lopez. The superior court disbelieved Delgado, who had conceded he knew the men were taking a gun and were doing so for a reason. Based on that admission and other evidence in the record—the escalating ill-will between the rival gangs; expert testimony regarding the nature of revenge or retribution following a gang-related shooting (of Rodriguez by Coronado); Delgado's and Rodriguez's close relationship and Delgado's demonstrably false denial that Rodriguez was present during the incident; and, in particular, evidence that Rodriguez and Delgado's gang, Pomona Sur Trece, held Lopez responsible for Coronado's conduct as confirmed by Delgado's admission to Pomona Police Detective Danny Kono that "we take [Lopez] out, we don't got to worry about this fool

13

coming over here no more doing that"—the court reasonably concluded Delgado knew Rodriguez and the unidentified third man intended to shoot Lopez and acted with express malice when actively assisting them by luring Lopez down the hallway from the apartment toward the shooter.[5]

On appeal, emphasizing it was conceded that he was not the shooter, Delgado posits an alternative explanation for this evidence and other snippets from the trial: It was Coronado who was targeted for retaliation, and the men went to Lopez's apartment only to find out where Coronado was. We decline, as we must, Delgado's invitation to reweigh the evidence. (See, e.g., *People v. Ramirez* (2022) 13 Cal.5th 997, 1118; *People v. Houston* (2012) 54 Cal.4th 1186, 1215.) The evidence before the superior court amply supported its finding that Delgado remained guilty of murder under a still-valid, post-Senate Bill 1437 theory of culpability.

4. *The People Were Not Estopped from Proceeding on a Theory of Malice Murder*

Delgado was tried and his jury instructed on alternate theories of aiding and abetting an express or implied malice murder and aiding and abetting an assault that resulted, as a natural and probable consequence, in Lopez's murder. As discussed, on appeal we rejected Delgado's challenges to his conviction under the natural and probable consequences doctrine, holding the evidence was sufficient to support a finding that

---

[5] Although it was the unidentified man, not Delgado, who knocked on the apartment door and initially asked to speak to Lopez, once Lopez was outside, as Lopez's sister testified, Delgado, who was known to Lopez, accompanied him without resistance down the hallway.

Lopez's murder was the natural and probable consequence of a planned assault on him. Delgado did not raise, and we did not address, any claim of error (legal or evidentiary) involving malice theories of murder; and, in upholding Delgado's conviction under one theory (which did not require a finding of malice), we made no ruling that supports Delgado's contention the prosecution was estopped from attempting to prove express or implied malice murder as grounds for denying Delgado's petition for resentencing under section 1172.6, subdivision (d)(3), which authorizes the prosecution to introduce new or additional evidence to carry its burden of proving the petitioner is guilty of murder under California law as amended by Senate Bill 1437.

To the extent Delgado's argument may be construed as asserting that the prosecution cannot introduce a new theory of murder liability at the section 1172.6, subdivision (d)(3), hearing, rather than that our 2007 opinion precluded a malice theory of murder, the Supreme Court and all courts of appeal that have addressed this contention have rejected it. (See, e.g., *People v. Gentile, supra,* 10 Cal.5th at p. 856 ["the Legislature authorized the parties to offer new or additional evidence during the [former] section 1170.95 process in order to allow the parties to explore issues they did not explore under the prior state of the law"]; *People v. Duchine* (2021) 60 Cal.App.5th 798, 813 ["[b]y allowing new evidence and providing for an evidentiary hearing, the Legislature plainly intended that the issues concerning whether the defendant was guilty under theories of murder not previously or necessarily decided would be resolved anew, through a factfinding process affording a degree of due process to the petitioner"]; see also *People v. Schell* (2022) 84 Cal.App.5th 437, 444-445 [because a resentencing hearing "'does not subject a

15

defendant to the risk of additional punishment, is not a trial, permits both parties to present new evidence, and merely considers whether the defendant's request for leniency meets the necessary criteria, there is no constitutional problem in allowing new theories of murder liability at that hearing'"].)  We have as well (see *People v. Hernandez*, *supra*, 60 Cal.App.5th at p. 111), and do again now.

## DISPOSITION

The postjudgment order denying Delgado's petition for resentencing is affirmed.


PERLUSS, P. J.

We concur:


SEGAL, J.


FEUER, J.