Filed 8/31/23  P. v. Huynh CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br> TRI TRONG HUYNH,<br><br>  Defendant and Appellant. | G061668<br><br>(Super. Ct. No. 09CF1812)<br><br>O P I N I O N |

Appeal from a postjudgment order of the Superior Court of Orange County, Julian W. Bailey, Judge.  Affirmed.

Eric S. Multhaup, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Eric A. Swenson and James H. Flaherty III, Deputy Attorneys General, for Plaintiff and Respondent.

Tri Trong Huynh appeals from the trial court's postjudgment order denying his Penal Code section 1172.6 petition.[1]  Huynh argues the court erred by admitting evidence, he received ineffective assistance of counsel, insufficient evidence supports the court's finding, the court's finding was legally incorrect, and his conviction must be reduced to second degree murder.

As we explain below, Huynh forfeited appellate review of his evidentiary argument because counsel failed to object.  On this record, he cannot establish he was prejudiced by any deficient performance.  Because sufficient evidence supports the trial court's conclusion, we need not reach his claim the court's ruling was legally incorrect.  Finally, section 1172.6 does not include a mechanism to reduce his conviction.  We affirm the postjudgment order.

FACTS

*I. 2010 Trial Facts*

We provide the facts from our prior nonpublished opinion, *People v. Huynh* (May 31, 2012, G044790) (*Huynh*).

"[A] group of relatives were at the Asian Garden Mall in Westminster.  The group included brothers Kevin Eng, Kerry Te, Chamrotna Eng, and cousins Sam Por, Steven Por, and Heng Por, Heng's wife, Cam Por, and Cam's brother.[2]  When Kevin, Sam, and Steven went outside to smoke, four Vietnamese/Asian men walked towards

---

[1]  Effective June 30, 2022, the Legislature renumbered Penal Code section 1170.95 to section 1172.6 without substantive change.  (Stats. 2022, ch. 58, § 10.)  For purposes of clarity, we refer to the statute as section 1172.6 throughout the opinion.  All further statutory references are to the Penal Code, unless otherwise indicated.

[2]  "We will refer to the parties by their first names for clarity, and not out of disrespect."

2

them.  One of the men asked, "'What are you looking at?'"  Kevin, Sam, and Steven did not respond.  As the men walked away, they said, "'Asian Crip.'"

"A little later, as the Eng group walked to their cars, the four men followed them.  One of the men asked where the Eng group was from, and Cam answered, "'We're just here shopping.  We're not from nowhere.'"  One of the men ran and kicked Sam and a whistle sounded.  A large group of men appeared from the shadows and attacked the Eng group, who were all unarmed.  Some of the attackers were armed; one of the attackers had a mop handle and one had a bat.  As the attackers fled, Heng heard someone say, 'A.C.' or 'A.B.'

"Kerry told Kevin someone hit him on the head and he felt tired.  He laid down and appeared to fall asleep. . . . Kerry died."  (*Huynh, supra,* G044790.)

Sergeant Brian Carpenter responded to the incident and interviewed Heng.  Heng told Carpenter that someone hit him with a bat.  He explained that Kerry was on the ground and someone hit him very hard on the head with a bat.  He said another man was punching Kerry.  The crimes went unsolved.  (*Huynh, supra,* G044790.)

Eight years later, Detective Tim Walker was investigating an unrelated case when he learned of this case and Huynh.  Walker interviewed Huynh five times over the course of several months about the fight.  During each interview, Huynh admitted he was at the fight.  During the last interview, Huynh admitted he associated with Asian Crips gang members and admitted he kicked someone during the fight.  (*Huynh, supra,* G044790.)

At trial, "Kevin testified that weeks after the incident he identified Huynh from a photographic lineup as the person who was hitting people with a mop stick."  But on cross-examination, Kevin stated he was not sure the person he previously identified was the person hitting people with the mop stick.  (*Huynh, supra,* G044790.)

"Chamrotna testified that weeks after the incident he identified Huynh from a photographic lineup as the person armed with a stick and hitting people.  He explained

3

Huynh was standing on a car with a stick near where Kerry was being beaten." But on cross-examination, "Chamrotna stated he was unsure whether Huynh was standing on top of the car with a stick." (*Huynh, supra,* G044790.)

Finally, Walker testified as the prosecutor's gang expert. Based on a plethora of evidence, Walker opined Huynh was an active participant in the Asian Crips criminal street gang at the time of the murder. He explained the offenses were done to promote the criminal street gang because there was a gang hit up, the gang committed violent acts, and the attackers claimed gang membership. (*Huynh, supra,* G044790.)

The jury convicted Huynh of murder committed for a criminal street gang purpose (Pen. Code, §§ 187, subd. (a), 190.2, subd. (a)(22)), and street terrorism (§ 186.22, subd. (a)). The jury found true he committed murder for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)), and personally used a deadly weapon (§ 12022, subd. (b)(1)). After the trial court denied Huynh's new trial motion, it sentenced him to life in prison without the possibility of parole for the murder plus a consecutive term of one year for personally using a deadly weapon. We affirmed. (*Huynh, supra,* G044790.)

## II. Postjudgment Facts

In January 2019, Huynh petitioned for resentencing pursuant to section 1172.6. The trial court summarily denied the petition. We reversed and remanded the matter for the court to issue an order to show cause and conduct an evidentiary hearing. (*People v. Huynh* (May 4, 2021, G058444) [nonpub. opn.].) We explained the gang special circumstance did not establish as a matter of law that the jury convicted Huynh of murder as an aider and abettor. (*Ibid.*)

On remand, the parties filed briefs. At the August 2022 evidentiary hearing, the prosecutor moved to admit the reporter's and clerk's transcripts (trial transcripts) from Huynh's 2010 trial. Huynh's counsel did not object, except to five

4

categories of evidence detailed in his brief, including Walker's expert opinion.[3] The prosecution rested.

Huynh offered the testimony of four members of the Eng group, including Chamrotna.[4] Chamrotna testified that shortly after the incident, he viewed a photographic lineup and identified the man with the bat and the man who swung at him. Neither person was Huynh. On cross-examination, the prosecutor did not question Chamrotna about his trial testimony, i.e., his identification of Huynh standing on the car swinging a stick.

After counsel argued, the trial court denied Huynh's petition. The court explained that based on all the evidence presented at trial, Huynh was an active participant in the crime. The court stated, "[H]e was at least standing on top of a car where a beating was being administered, waving a stick in the air, which can only be, in [the court's] mind, an act of encouragement." Acknowledging the issue was pending before our Supreme Court,[5] the court added the jury's finding on the gang special circumstance established it concluded he had an intent to kill. Huynh appealed.

### DISCUSSION

Senate Bill No. 1437 (2017-2018 Reg. Sess.) (SB 1437) amended sections 188 and 189 and added section 1172.6, significantly modifying the law relating to accomplice liability for murder. (*People v. Vargas* (2022) 84 Cal.App.5th 943, 950 (*Vargas*).) Former section 1172.6, subdivision (a), provided, in relevant part, "A person convicted of felony murder or murder under a natural and probable consequences theory

---

[3] In the brief, Huynh's counsel stated that section 1172.6, "sub[division] (d)(3) makes clear testimony from petitioner's prior trial is admissible in general."

[4] Kevin, the other person who identified Huynh as the person hitting people with a mop stick at the original trial, died months before the evidentiary hearing.

[5] *People v. Curiel* (Nov. 4, 2021, G058604) (nonpub. opn.), review granted Jan. 26, 2022, S272238.

may file a petition with the court that sentenced the petitioner to have the petitioner's murder conviction vacated and to be resentenced on any remaining counts . . . ." (Stats. 2018, ch. 1015, § 4.)

The Legislature enacted SB 1437 to "amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) Under section 1172.6, if the petitioner makes a prima facie showing, the court must issue an order to show cause and, absent a waiver and stipulation by the parties, hold a hearing to determine whether to vacate the murder conviction, recall the sentence, and resentence the petitioner. (§ 1172.6, subds. (c), (d)(1).)

At the time Huynh filed his petition, former section 1172.6, subdivision (d)(3), provided that at the evidentiary hearing, "The prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens." However, the Legislature amended section 1172.6, subdivision (d)(3).

Senate Bill No. 775 (2021-2022 Reg. Sess.), which took effect on January 1, 2022, before the evidentiary hearing, amended section 1172.6 to address the scope of admissible evidence at the evidentiary hearing.

As amended, section 1172.6, subdivision (d)(3), provides, in relevant part: "The admission of evidence in the hearing shall be governed by the Evidence Code, *except that* the court may consider evidence previously admitted at any prior hearing or trial that is admissible *under current law*, including witness testimony, stipulated evidence, and matters judicially noticed." (Italics added.)

6

*I. Admission of Trial Transcripts*

Huynh argues the trial court erred by admitting the trial transcripts in their entirety pursuant to the then recently amended section 1172.6, subdivision (d)(3). Conceding his counsel did not object to admission of the transcripts, he contends his counsel was ineffective. We disagree.

Witkin states the general rule: "Where inadmissible evidence is offered, the party who desires to raise the point of erroneous admission on appeal must object at the trial, specifically stating the grounds of the objection, and directing the objection to the particular evidence that the party seeks to exclude. Obviously, failure to object at all waives the defect." (3 Witkin, Cal. Evidence (6th ed. 2023) Presentation at Trial, § 395; Evid. Code, § 353; *People v. Perez* (2020) 9 Cal.5th 1, 7 (*Perez*) [failure to object to admission of hearsay at trial forfeits appellate claim evidence was improperly admitted].) """"The reason for the [objection] requirement is manifest: a specifically grounded objection to a defined body of evidence serves to prevent error. It allows the trial judge to consider excluding the evidence or limiting its admission to avoid possible prejudice. It also allows the proponent of the evidence to lay additional foundation, modify the offer of proof, or take other steps designed to minimize the prospect of reversal.'" [Citation.]" (*Perez, supra,* 9 Cal.5th at p. 7.)

As Huynh acknowledges, at the evidentiary hearing, his counsel did not object to admission of the trial transcripts in their entirety. The trial court's duty to ensure proceedings are conducted in accordance with the Evidence Code does not absolve counsel of the duty to object to admission of evidence counsel believes inadmissible. He did object to five categories of evidence. Huynh's claim the court erred by admitting the trial transcripts in their entirety is forfeited because counsel's objections were limited to the five categories of evidence. Thus, we must determine whether Huynh received ineffective assistance of counsel.

To prevail on a claim of ineffective assistance of counsel, a defendant must establish two criteria:  (1) counsel's performance fell below an objective standard of reasonable competence and (2) defendant was prejudiced, i.e., it is reasonably probable there would have been a different result absent the alleged error.  (*Strickland v. Washington* (1984) 466 U.S. 668, 687, 694.)  "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed."  (*Id*. at p. 697.)

After providing a lengthy discussion of section 1172.6, subdivision (d)(3)'s plain language, legislative history, purpose, and commentary, Huynh asserts his counsel was ineffective for failing to object to admission of the trial transcripts in their entirety. His argument is essentially that the amendment limits the admissibility of prior witness testimony subject to current law, i.e., the Evidence Code.  He adds, "The Legislature could not have meant to create an exception so broad that all prior testimony from the original trial would be admissible for its truth without regard to the Evidence Code, because that would negate the primary thrust of the amendment."  (Underscoring omitted.)

First, section 1172.6, subdivision (d)(3), states, "the court may consider evidence previously admitted *at any prior* hearing or *trial* that is admissible under current law, *including witness testimony*."  (Italics added.)  The plain language establishes a reporter's transcript of witness testimony at trial is admissible at a section 1172.6 evidentiary hearing.  At the time of the hearing, there was authority that stood for the proposition that in a section 1172.6 proceeding, the trial court may consider the record of conviction.  *People v. Lewis* (2021) 11 Cal.5th 952, 971, stood for the proposition that at the prima facie stage, the trial court may consider the record of conviction.  *People v. Clements* (2022) 75 Cal.App.5th 276, 297-298 (*Clements*), stood for the proposition section 1172.6, subdivision (d)(3), does not contemplate a whole new trial on all the elements of murder.  Based on this authority, we cannot conclude counsel was ineffective

for failing to object to admission of the trial transcripts in their entirety. He objected to those portions where a legal basis existed.

Second, even assuming counsel was ineffective, Huynh cannot establish he was prejudiced. It is not reasonably probable that had counsel objected there would have been a different result. Importantly, Huynh does not assert any specific evidence was inadmissible pursuant to *the Evidence Code*. The weight of authority at the time of the evidentiary hearing stood for the proposition that transcripts of witness trial testimony were admissible at a section 1172.6 evidentiary hearing. Had counsel objected to admission of the trial transcripts in their entirety, the trial court would have overruled that objection. How else would a trial court determine whether a petitioner is entitled to relief? Again, section 1172.6, subdivision (d)(3), does not contemplate a whole new trial. (*Clements, supra,* 75 Cal.App.5th at p. 298.)

Huynh asserts generally that Evidence Code sections 240 [witness unavailable] and 1291 [former testimony hearsay exception] authorize admission of trial testimony only when the witness was determined to be unavailable.[6] Again, however, section 1172.6, subdivision (d)(3), authorizes the admission of a reporter's transcript of witness testimony at trial, which is what happened here. As we explain below, sufficient evidence supports the trial court's conclusion Huynh aided and abetted murder. Huynh has not established it was reasonably probable he would have received a better result had counsel objected to admission of the trial transcripts.[7]

---

[6] The implication is that because Chamrotna testified, his prior testimony would be inadmissible. Chamrotna was one of two people who identified Huynh as the person hitting people with a stick and the one person who testified he was standing on a car. The other person who identified Huynh died months before the hearing. Presumably, his prior testimony would be admissible.

[7] We note appellate counsel indicated he is preparing a petition for writ of habeas corpus to raise the claim Huynh's counsel was ineffective. To date, we have not received that petition.

## II. *Sufficiency of the Evidence*

Huynh contends insufficient evidence supports the trial court's conclusion he aided and abetted murder. We disagree.

"At an evidentiary hearing under section 1172.6, subdivision (d)(3), the trial judge is charged with determining, beyond a reasonable doubt, if the petitioner is guilty of murder under a theory that remains valid after the amendments to the substantive definition of murder. [Citations.]" (*Vargas, supra,* 84 Cal.App.5th at p. 952 [section 1172.6, subdivision (d)(3), does not contemplate whole new trial].) "Its factual finding . . . is reviewed for substantial evidence. [Citation.] Accordingly, 'we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the [trier of fact] could reasonably have deduced from the evidence.' [Citations.] In conducting this review, ""[w]e resolve neither credibility issues nor evidentiary conflicts . . . .' [Citation.]" [Citation.]' [Citation.]" (*People v. Schell* (2022) 84 Cal.App.5th 437, 442 (*Schell*).)

Here, sufficient evidence supports the trial court's conclusion Huynh aided and abetted murder. At trial, Chamrotna testified that weeks after the incident, he identified Huynh as the person standing on top of a car swinging a stick at people. Kevin also testified that weeks after the incident, he identified Huynh as the person swinging a stick at people. Although on cross-examination, both backtracked, it was for the jury to make that credibility determination. And at the section 1172.6 hearing, it was for the trial court to determine whether the prosecution proved beyond a reasonable doubt whether the petitioner is still guilty of murder under a viable theory. The court reviewed the record and determined Huynh was liable of murder under a viable theory because he encouraged, i.e., aided and abetted, murder. The record includes evidence to support the court's conclusion.

Huynh notes that at the section 1172.6 evidentiary hearing, the prosecutor did not examine Chamrotna about his trial testimony regarding his identification. He

10

asks this court to draw an evidentiary inference in his favor because of the prosecutor's failure. (See Evid. Code, § 412.) That is not our role on appeal. (*Schell, supra,* 84 Cal.App.5th at p. 442.)

Huynh cites to *Clements, supra,* 75 Cal.App.5th at page 297, for the proposition, "It's true that it's unusual to ask the trial judge to sit as the fact finder and (in some cases) make factual determinations on a cold record, as the judge did in this case." But as Huynh recognizes, the *Clements* court concluded that although it was not an "ideal position for a fact finder, it is possible to review a trial transcript and reach an opinion about what actually happened." (*Ibid.*)

In this setting, the trial court was the fact finder. Huynh understandably is displeased with the result. We cannot substitute our judgment for the trial court's where there was sufficient evidence supporting the court's conclusion Huynh aided and abetted the murder. Because we conclude sufficient evidence supported the trial court's conclusion, we need not address his claim the court erred by concluding the gang special circumstance made him ineligible for relief.

## III. *Reduction from First to Second Degree Murder*

Huynh states that at trial, the court did not instruct the jury on the necessary mens rea for first degree murder as to him. He asserts that at the section 1172.6 hearing, the trial court erroneously failed to make a finding as to the degree of murder and that we must either reduce his conviction or reverse and remand for the court to make the finding. We cannot do that.

In *People v. Gonzalez* (2023) 87 Cal.App.5th 869, 880, the court opined, "Section 1172.6's plain language does not contain a mechanism for a trial court to reduce a first degree murder conviction to second degree murder." The court explained the following: "[U]nder section 1172.6, a trial court has two options in adjudicating a resentencing petition: Deny the petition and leave in place the murder conviction or grant the petition and vacate the murder conviction and resentence the defendant on the

11

remaining charges or target offense or underlying felony. Reducing a first degree murder conviction to second degree murder is not an option under section 1172.6." (*Id*. at p. 881.) *Gonzalez* is persuasive.

Section 1172.6's plain language does not authorize the trial court to reduce a murder conviction. Thus, here, the trial court was not required to make a finding as to the degree of murder because it had only two options—deny the petition or grant the petition vacating the murder conviction and resentence the defendant on the remaining charges. There is no third door, Monty.

## DISPOSITION

The postjudgment order is affirmed.

O'LEARY, P. J.

WE CONCUR:

BEDSWORTH, J.

MOORE, J.

12